UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO._____
(Ancillary Proceeding to Case No.  12-61872-CIV-SCOLA)


CHARLES H. LICHTMAN, as Receiver for
FREEDOM LEGAL PLANS, LLC, *et al.,*

       Plaintiff,

vs.


LITVIN LAW FIRM P.C., a New York
professional corporation, and LITVIN,
TORRENS & ASSOCIATES, PLLC, a
Florida professional limited liability company
(f/k/a LITVIN, TORRENS & VAIMAN, LLC);
GENNADY LITVIN, individually, and LUIS A.
TORRENS, individually,

       Defendants.
_____/

## COMPLAINT

       Plaintiff, Charles H. Lichtman, the duly appointed Receiver for certain Receivership

Defendants,[1] through his undersigned counsel, hereby sues Defendants Litvin Law Firm, P.C.;

Litvin, Torrens & Associates, PLLC (f/k/a Litvin, Torrens & Vaiman, LLC); Gennady Litvin;

and Luis A. Torrens and alleges as follows:

## THE PARTIES

       1.     Plaintiff, Charles H. Lichtman, is the Court-appointed Receiver ("Receiver") for

the Receivership Defendants, together with certain other companies and individuals who were

affiliated with, or owned or controlled various of the Receivership Defendants (collectively

---

[1] Charles H. Lichtman was appointed Receiver by order of the Court in *Federal Trade Commission vs. Prime Legal Plans LLC, et al.,* Case No. 12-cv-61872 and he controls the assets and affairs of the companies identified as Receivership Defendants in that case.  [ECF No. 67, 156].

"Receivership Defendants"), pursuant to court orders entered on September 27, 2012, October 12, 2012, and February 28, 2013 ("Receivership Orders"), in a civil action brought in the United States District Court for the Southern District of Florida by the Federal Trade Commission ("FTC") as plaintiff, against the Receivership Defendants, entitled *Federal Trade Commission vs. Prime Legal Plans LLC, et al.,* Case No. 12-cv-61872 ("FTC Case").  The Receiver's place of business is c/o Berger Singerman LLP, 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida, 33301.

2.      Defendant Litvin Law Firm, P.C. ("Litvin Law") is a law firm formed as a New York domestic professional corporation with its principal place of business located at 1716 Coney Island Ave, Suite 5R, Brooklyn, New York, 11230-5801.  Litvin Law also conducts business in South Florida through its law office located at 11890 S.E. 8th Street, Suite 214, Miami, Florida, 33184. This Court has personal jurisdiction over Litvin Law pursuant to 28 U.S.C. § 1692 and 28 U.S.C. § 754.

3.      Defendant Litvin, Torrens and Associates, PLLC ("Litvin Torrens"), is a law firm formed as a Florida professional limited liability company, and was formerly known as both Litvin, Torrens & Associates, LLC and Litvin, Torrens & Vaiman, LLC.  This Court has personal jurisdiction over Litvin Torrens.  Litvin Torrens' principal place of business is at 11890 SE 8th Street, Suite 214, Miami, Florida, 33184.

4.      Defendant Gennady Litvin ("Litvin") is a citizen of the State of New York.  He is an owner of Litvin Law and Litvin Torrens, and practices law in the State of Florida and the State of New York.  Litvin is subject to this Court's jurisdiction pursuant to the Florida Long Arm Statute, Fla. Stat. § 48.193 by reason of his conducting business, engaging in solicition, and committing a tortious act within this state, as described below.

5.      Defendant Luis A. Torrens ("Torrens") is a citizen of the State of Florida, residing in Miami-Dade County.  He is an owner of Litvin Torrens and practices law in this state.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 754 and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367. This Complaint is brought in furtherance of and to accomplish the objectives of the Receivership Orders, and therefore, is ancillary to the Court's exclusive jurisdiction over the receivership estate.  In accordance with 28 U.S.C. § 754, the Receiver filed a copy of the FTC Case in the United States District Courts for the districts where property of the Receivership Defendants is known to exist, including the United States District Court for the Southern District of New York.

7.      The Court has personal jurisdiction over the Defendants pursuant to the nationwide service of process allowed under 28 U.S.C. §§ 1692 and 754.

8.      Venue is proper in the United States District Court for the Southern District of Florida, Miami Division, under 28 U.S.C. §§ 1391 and 754 as this action is related to and arises out of the underlying FTC Case pending in this district, which resulted in the Receiver's appointment reflected by the Receivership Orders.  Further, the conduct of the Receiver's activities principally takes place in this district.

## GENERAL ALLEGATIONS

9.      Among other duties, the Receivership Orders authorize the Receiver to investigate the affairs of the Receivership Defendants, to marshal their assets, and to institute legal proceedings against individuals or entities that have improperly received money directly or indirectly from or related to the consumers who have been victimized by the Receivership Defendants.

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

10.    In the FTC Case, the FTC alleged in its Complaint that the Receivership Defendants and their related individuals engaged in multiple wrongful acts, including violating federal laws associated with the Receivership Defendants' mortgage assistance relief services scheme which was perpetuated against consumers nationwide.  Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens, were material participants, co-conspirators and aiders and abettors with the Receivership Defendants' in their systematic pattern of conduct which was designed, intended to, and indeed did fraudulently induce consumers to purchase the Receivership Defendants' services, as described below.

11.    At all times material to this complaint, Prime Legal Plans LLC; Consumer Legal Plans LLC (Nevada); Consumer Legal Plans, LLC (Wyoming); Freedom Legal Plans, LLC; Frontier Legal Plans, LLC; Reaching U Network, Inc. also d/b/a Legal Billing Services, Legal Servicing Partners, Forensic Auditor Services, 123 Save Our Home, Save Our Home Plan, Home Savers, Legal Network Association, and Homeowners Rescue Mission; 123 Save A Home, Inc.; American Hardship, LLC; Back Office Support Services LLC; Consumer Acquisition Network, LLC; Legal Servicing and Billing Partners, LLC; Affiliate Management Group LLC; Attorney Network LLC; Debt Soft LLC; Distribution & Processing LLC; Free Assets WY LLC; Management Solutions WY LLC; Office One WY LLC; Software Solutions WY LLC; DR Enterprises LLC; JD Enterprises LLC; Executive Holdings Offices, LLC; Trident Services & Billing LLC; UKLI Holdings LLC; U.S. Ventures LLC; Litigation Strategies LLC; Lazanh Holdings LLC, Avera Systems USA, Inc.; Bush & Brenner LLC; Continental Legal Plan, Inc.; The DR Enterprises Trust; Office One Nevis LLC; Soft Nevis LLC; Free Assets Nevis LLC; Office 2 Solutions LLC; Nevis Audit Company LLC; Back Room Nevis LLC; Attorney Nevis LLC; Nevis Management Solutions LLC; Affiliate Nevis LLC; Nevis Service & Billing LLC;

BERGER SINGERMAN
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

Nevis Access Company LLC; and Next Era Group LLC (the "Receivership Defendants") operated as a common enterprise while engaging in the deceptive acts and practices set forth below. These Receivership Defendants conducted their illegal acts and practices through an interrelated network of companies that had: (a) common ownership, business functions, and employees; (b) commingled funds in their various business accounts; and (c) effectively all utilized the same manipulative marketing materials. In addition, these Receivership Defendants operated from two primary office locations in Fort Lauderdale and one in Miami: 6451 N. Federal Highway, Suite 1200, Fort Lauderdale, Florida, 2400 East Commercial Blvd., Fort Lauderdale, Florida and 168 SE 1st Street, Miami, Florida.

12.    From at least mid-2010 to approximately October 2012, the Receivership Defendants engaged in a course of conduct to advertise, market, sell, provide, offer to provide, or arrange for others to provide mortgage loan modification services and foreclosure defense services to consumers. The Receivership Defendants marketed these services in a variety of ways, including through websites, and by their agents and telemarketers who contacted consumers nationwide through unsolicited telemarketing calls.

13.    Through this marketing, the Receivership Defendants specifically sought out and preyed upon financially distressed homeowners to lure them into expensive membership programs predicated upon assurances that the consumers would receive full-service legal representation from expert mortgage foreclosure defense attorneys who would fight their lenders to save their homes from foreclosure, or make their mortgage payments more affordable. In addition, the Receivership Defendants falsely represented to consumers that they would provide them (at a cost) with forensic loan audits and other purportedly beneficial reports that would identify errors in their mortgage loan documents and predatory lending practices, that would

**BERGER SINGERMAN**
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

assist the attorneys in defending against foreclosure cases, and/or win loan related concessions from lenders.  The name of the membership program advertised and marketed to consumers changed numerous times, but included: Freedom Legal Plans, American Legal Plans, Consumer Legal Plans, Frontier Legal Plans, Prime Legal Plans, and lastly, Prime Access Management [collectively, "Legal Plans"].

14.     Membership in the Legal Plans program(s) was intentionally designed to continue for an open-ended period of time.  The Receivership Defendants charged a fee of either $595 or $750 per month to the consumers who signed up, depending on how much the Receivership Defendants could extract from the consumer.  These fees were in part designated for and paid to attorneys for services that were allegedly rendered for the benefit of the consumers.  The longer the consumer was in the program the better it was for the Receivership Defendants and the respective attorneys because of the revenue generated by the monthly, recurring fees.  It was not, however, better for the consumers who either overpaid for services or received no service of value for the money paid.

15.     Certain of the Receivership Defendants' websites contained "Testimonials" featuring stories from consumers who purportedly were able to avoid foreclosure or otherwise stay in their homes as a result of the efforts of one of more of the Receivership Defendants and its network of attorneys.  Other such websites contained the following statements about the success of their network attorneys:

- Her mortgage payment was $2,400 per month, she now pays her attorney $595 per month with no upfront retainer or set up fee and all audits were included. She has been living in her house paying just $595 for 4.5 years now and the bank is so scared of the research the attorney has done, as well as the discovery performed on her loan, that they have backed off her case. Her attorney filed for a dismissal of the case in court and it was granted, **she now has no lawsuit, no one chasing her for a payment and so much evidence of fraud against her lender that her attorney is**

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

**filing a suit to get her mortgage deleted and her house for free.** She has saved over $86,000 in payments in 4 years; still lives in the same house her 3 sons grew up in and she is protected by the attorney who works on her case several hours per month for a flat rate of $595 per month, (emphasis in the original).

- Every attorney in the network concentrates on foreclosure and goes through an extensive review before being qualified to participate. In addition to the review your attorney is required to make a commitment to provide you with a level of service that is usually enjoyed only by large corporate clients.

- Imagine being able to fight your foreclosure, having a full legal defense team working for you, litigating your case in court and working to reinstate your mortgage. This is far better than doing nothing and allowing the banks to easily come after you and take your home that you worked so hard to acquire.

  **"Having legal representation during a foreclosure usually results in a bank agreeing to restructure the terms of your loan to produce a payment or reinstatement package you can afford"** (emphasis in the original)

- The banks are getting very aggressive and they are using shrewd law firms to fast forward your foreclosure case. It is your right as an American to fight back with the best defense team available for your case. Without a American Legal Plans attorney to help you litigate your case, your rights may not be fully utilized in a Court of Law. Our network attorneys have helped hundreds of Americans stay in their homes. You too may have a favorable outcome if you choose the right defense plan.

16.    In numerous instances, the Receivership Defendants, through their authorized agents, represented to consumers expressly or by implication that if they enrolled in Legal Plans, their attorneys would:

a.  provide full-service legal representation from an attorney in their home state, which would include unlimited telephone consultations and involve all aspects of litigation, including motion practice, depositions, court appearances, arbitration and negotiation with their respective lenders;

b.  likely obtain loan modifications or other concessions from lenders and that the process would be complete within as little as three to four months;

c.  be able to prevent foreclosure, or at a minimum, delay it;

d.  conduct various audits and reviews of the consumers' loan documents and transactions and that the majority of audits and reviews would reveal fraud, errors, or predatory acts committed by the lender;

e.  use the findings from the audits and reviews to defend foreclosure lawsuits and extract concessions from lenders that would lower consumers' monthly mortgage payments through reductions in loan principal and/or interest rates;

f.  get the lenders to grant the foregoing concessions to avoid going to court when confronted with proof that they violated the law;

g.  possibly void a mortgage entirely, even with minor errors in consumers' mortgage loans.

17.    Numerous times after the initial sales pitch, the Receivership Defendants provided consumers with additional materials and statements via e-mail to bolster their claims about the outcomes that consumers who enrolled in Legal Plans could expect to achieve, including:

- Lenders under Federal investigation for predatory loans, and lending practices and fraud. You have legal rights as a home owner, and if there are violations in your mortgage you are entitled to damages or at the least a mortgage you can afford. A Forensic Loan Audit and an attorney specializing in Mortgage/Foreclosure Defense can help you achieve this.

- The Forensic Loan Audit is a 200 point inspection of your loan documents to see if you have been a victim of predatory lending or fraudulent practices of any kind. Based on the findings and the severity of such, the attorney would be able to litigate against your lender for damages. Some homeowners have won their deed in a court of law because of the severity of the findings.

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

- YOU HAVE RIGHTS, AND NOW HAVE AT YOUR DISPOSAL, AN ATTORNEY NETWORK THAT IS ABLE TO KEEP YOU IN YOUR HOME, HALT THE FORECLOSURE PROCESS, AND FIGHT FOR YOUR RIGHTS!

18.     In reality, the Receivership Defendants were sham marketing operations that preyed on innocent consumers at a time of financial desperation.  Numerous consumers who enrolled in Legal Plans: (a) failed to obtain any relief after joining one of the Legal Plans; (b) repeatedly asserted and complained that they received little or no service from their attorneys, as promised, despite paying their monthly fees, which in countless instances the consumers could not afford and paid out of desperation hoping to save their homes; (c) were left to negotiate on their own with lenders; (d) suffered significant economic injury, including paying hundreds or thousands of dollars to attorneys who were part of the "attorney network"; (e) failed to obtain a loan modification, principal reduction, or other relief to stop a foreclosure lawsuit or make consumers' mortgage payments affordable; (f) were left to their own devices to file for bankruptcy if foreclosure was imminent despite promises of full-service legal representation by Defendants Litvin Law and Litvin Torrens; and (g) had their homes go to judgment in their foreclosure lawsuit, resulting in those consumers losing their homes.

## BACKGROUND ON LITVIN LAW AND LITVIN TORRENS.

19.     Between November 2009 and October 2012, Litvin Law, was owned and controlled by Litvin, an attorney licensed to practice law in the state of New York and Florida, respectively admitted to the bar of Florida in 2008, and the bar of New York in 2009.  Litvin had very little substantive experience in any area of the law because he had just been admitted to the bar.  Due to the nation's economic downtown, and in particular the impact of that downturn in the mortgage foreclosure arena in 2010, Litvin saw opportunity in representing individuals who faced defaults in or foreclosures of their home mortgages.

20.     Litvin Torrens is owned and controlled by Litvin and Torrens. Litvin Torrens was formerly known as Litvin, Torrens & Vaiman, LLC and was organized in October, 2010 by attorney Julie Vaiman ("Vaiman") with Litvin and Torrens. Vaiman was admitted to practice law in the states of New York and New Jersey in 2007.

21.     In June, 2011, Litvin, Torrens & Vaiman, LLC changed its name to Litvin, Torrens & Associates, LLC and then to Litvin, Torrens & Associates, PLLC in September of the same year. Litvin Torrens practiced law in New York, New Jersey and Florida.

22.     Torrens is an attorney licensed to practice law in the state of Florida, admitted to the bar of Florida in 2006.

23.     Prior to founding Litvin Torrens, Litvin and Torrens were classmates at the St. Thomas University School of Law in Miami Gardens, Florida. Like Litvin, Torrens saw opportunity in representing individuals who faced defaults in or foreclosures of their home mortgages. Litvin Torrens was organized to focus on clients with debt problems with a primary focus on the foreclosure industry even though attorney Litvin had no experience defending foreclosure actions.

24.     Prior to founding Litvin Law and Litvin Torrens, Litvin previously worked as a manager of a debt settlement business known as Debt Settlement 2 Day L.L.C. which was owned by his parents and operated out of the same office address as Litvin Law. Debt Settlement 2 Day L.L.C. marketed debt settlement products to consumers for FBL Associates, a debt settlement company that was purportedly a "national prepaid legal center, which is dedicated to giving consumers not only extensive online informational resources but access to a nationwide network of experienced bankruptcy attorneys."

BERGER SINGERMAN
attorneys at law        *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

25.     However, when new federal rules were implemented governing the debt settlement industry, FBL Associates closed down its debt settlement business operations and Litvin's parents' business was left unpaid for its marketing services.  When Litvin personally traveled to Miami to try to find out more about the shutdown of FBL Associates he met with the primary principal of the Receivership Defendants, Derek Radzikowski ("Radzikowski").  At that time, Radzikowski operated a back-end company servicing the debt settlement "clients" of FBL Associates.

26.     While in Miami, Litvin was recruited by Radzikowski to become a "network attorney" in the Legal Plans scheme.  Although Litvin had little, if any, foreclosure defense experience, Litvin signed on to help Receivership Defendants market and solicit consumers into the scheme with the promise that Defendants' Litvin Law and Litvin Torrens would fill the part of law firms who would provide Legal Plans' "members" with the legal services.

27.     Throughout Defendants' active participation in the Receivership Defendants' consumer fraud scheme, Defendants Litvin Law and Litvin Torrens typically received monthly payments of $75, $250, or $400 per homeowner "client" from the monthly fees the Receivership Defendants and their affiliates charged the "members" of the Legal Plans scheme.  These fees were established in conjunction with Legal Plans, and were called Program Fees, Maintenance Fees, Underwriting Fees, or simply fees for "access" to legal services.

28.     The scheme was so profitable for both Receivership Defendants and Defendants Litvin Law and Litvin Torrens, at the request of Receivership Defendants, that Defendants Litvin Law and Litvin Torrens expanded to 31 states by hiring contract attorneys in other states who, in some cases, simply responded to Craigslist advertisements or Facebook postings promising "an extra $5,000 to $10,000 per month per state and more with time."  Attorneys who signed on with

Defendants Litvin Law and Litvin Torrens split the fees generated from the Legal Plans scheme 50/50 with Defendants Litvin Law and Litvin Torrens.

29.     Defendant Litvin is the only non-contract attorney at Defendant Litvin Law. Indeed, the vast majority of "legal services" provided to consumers in the Legal Plans scheme, regardless of the state of residency of the Legal Plans "member", are handled by dozens of paralegals at the Brooklyn, New York office of Defendant Litvin Law.

### A.     Defendants Litvin Law and Litvin Torrens Actively Conspired with Receivership Defendants to Perpetuate the Legal Plans scheme.

30.     Defendants knowingly and willingly participated in the Legal Plans scheme and profited from its perpetuation.  Defendants Litvin Law and Litvin Torrens relied on the Receivership Defendants and their affiliates to employ marketing and client solicitation techniques that Defendants Litvin Law and Litvin Torrens, as law firms, are prohibited from using.  Among the various "marketing" techniques used to generate clients for Defendants Litvin Law and Litvin Torrens, employees of the Receivership Defendants and their affiliates purchased sales leads to make cold-calls on consumers throughout the country.  Aggressive sales scripts, websites, and advertisements extoling the virtues of the Receivership Defendants' scheme were also used to solicit consumers to become members of the mortgage assistance relief services scheme and, in turn, clients of Defendants Litvin Law and Litvin Torrens.

31.     Defendants Litvin Law and Litvin Torrens obtained as "clients" those same consumers lured into the Legal Plans scheme through the unlawful solicitations and advertisements that are at issue in the FTC Case.  Defendants allowed the operators of the Legal Plans scheme to solicit prospective Legal Plans' "members" and clients for the Defendants by aggressive telemarketing tactics in violation of the Rules Regulating the Florida Bar.  During its

BERGER SINGERMAN
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

operation, the Legal Plans scheme provided Defendants with the bulk of their clients – many of whom may still be clients of Defendants Litvin Law and Litvin Torrens.

32.     The non-lawyer employees and principals of the Receivership Defendants who operated the Legal Plans scheme actively solicited desperate consumers with the false promises that every "attorney in the network concentrates on foreclosure and goes through an extensive review before being qualified to participate," "Our network attorneys have helped hundreds of Americans stay in their homes," and that "members" would receiver "full-service legal representation."  Sales scripts that the Legal Plans cold-callers used to lure consumers included statements that "you will be able to choose a licensed attorney that has been screened and chosen to participate in the program," "All of the attorneys concentrate their practice on foreclosure and real estate law," and promises that "all of your payments go into a trust account in your name and not even a penny will get disbursed until the service or product has been delivered."

33.     Not only did Defendants assist Receivership Defendants in the unlawful solicitation prospective clients, Defendants worked with Receivership Defendants to develop the Legal Plans' mortgage assistance relief services product offerings and marketing materials that were marketed to consumers to ensnare them into the Legal Plans scheme.  Defendants also reviewed and edited the marketing copy used by the Receivership Defendants on Internet websites and assisted in the Receivership Defendants' attempts to circumvent the FTC's Mortgage Assistance Relief (MARS) Rule, 16. C.F.R. Part 322.  On several occasions, Defendant Litvin traveled to the Receivership Defendants' offices in Florida to help train the Legal Plans sales force.

34.     Consumer victims solicited by the Receivership Defendants were often promised mortgage loan modifications by becoming paying members of the Legal Plans scheme.  Yet,

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

even though Defendant Litvin knew and advised Receivership Defendants that the FTC's MARS Rules prohibited charging upfront fees for loan modification services, Defendants Litvin Law and Litvin Torrens nonetheless continued to receive a cut of the monthly "membership" fees charged to the consumers upfront and on a monthly basis.

35.     Each month, the Legal Plans "membership" fees drawn from consumers' bank accounts were immediately processed by Meracord, LLC ("Meracord"), a third-party payment processor formerly known as NoteWorld, LLC, and distributed to the labyrinth of bank accounts set up by the Receivership Defendants and their co-conspirators – regardless of whether any legal services were provided. Defendants Litvin Law and Litvin Torrens were then paid from those Receivership Defendants' accounts designated to pay the Legal Plans "network attorneys".

36.     More than $26 million of consumers' funds were received by the Receivership Defendants, their affiliates and defendants Litvin Law and Litvin Torrens, including profits that directly trickled down to Litvin, individually and Torrens, individually, through their ownership and operation of Litvin Law and Litvin Torrens.  The Receiver seeks to recover more than $4.9 million that was fraudulently transferred directly to Litvin Law and Litvin Torrens and indirectly to Litvin and Torrens, individually, during the course of the aforementioned scheme.

37.     Litvin Law improperly received approximately $2,517,315.00 from the bank accounts of Receivership Defendants Attorney Network, LLC, Free Assets WY, LLC, and Freedom Legal Plans, LLC, plus $20,900 paid directly from Meracord to Litvin Law from accounts designated for the Receivership Defendants.  *See* Exhibits A and B, respectively.

38.     Litvin Torrens improperly received approximately $2,334,448.40 from the bank accounts of Receivership Defendants Attorney Network, LLC, Free Assets WY, LLC, Freedom Legal Plans, LLC, and Distribution & Processing LLC, plus $39,450 paid directly from

Meracord to Litvin Torrens from accounts designated for the Receivership Defendants.  *See* Exhibits C and D, respectively.

39.     The Receiver seeks to avoid all of these transfers pursuant to the Florida Fraudulent Transfer Statute, Fla. Stat. § 726.101, *et seq.*  The Receiver further brings other claims against the Defendants for torts committed in connection with the Receivership Defendants' fraudulent scheme intended to victimize consumers.

### B.      Unlawful Fee Sharing With Non-Lawyers and Unlicensed Practice of Law Render All Contracts With Receivership Defendants Void *Ab Initio*.

40.     In Florida, sharing legal fees with non-lawyers violates the Rules of Professional Conduct, Rule 4-5.4(a) ("A lawyer or law firm shall not share legal fees with a nonlawyer …").

41.     The Rules of Professional Conduct, Rule 4-1.5(a), also prohibit Defendants' role in the Receivership Defendants' Legal Plans scheme.  Rule 4-1.5(a) ("An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar.").  Defendants Litvin Law and Litvin Torrens were active in the development, review, and preparation of the Receivership Defendants' advertising and solicitation of consumers which violate the Florida Rules of Professional Conduct.

42.     Furthermore, in Florida, it constitutes the unlicensed practice of law for a non-lawyer to hold himself out as an attorney either expressly or impliedly.  This includes using "legal" in the name of business.

43.     In the state of Florida, engaging in the unlicensed practice of law is a third degree felony.  *See* § 454.23, Fla. Stat. (2011):

> Any person not licensed or otherwise authorized to practice law in this state who practices law in this state or holds himself or herself out to the public as qualified to practice law in this state, or who willfully pretends to be, or willfully takes or uses any name, title, addition, or description

implying that he or she is qualified, or recognized by law as qualified, to practice law in this state, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

44.     Defendants Litvin Law and Litvin Torrens actively associated with the Receivership Defendants, such as "Freedom Legal Plans", "Prime Legal Plans", "American Legal Plans", "Frontier Legal Plans", etc., to induce consumers to pay for legal services which, with Defendants' permission and acquiescence as co-conspirators, were performed by non-lawyers or not performed at all.

45.     Furthermore, although Defendants were held out to be independent attorneys hired by Receivership Defendants to provide legal services to the Legal Plans members, Defendants instead took direction from the Receivership Defendants and Radzikowski directly on the types of legal services to be offered, how often clients were to be contacted by Defendants, and the provision of legal services to the Legal Plans members.  In fact, Defendants signed "contracts" with the Receivership Defendants which proscribed Defendants' independence and otherwise controlled Defendants' attorney-client relationships with the Legal Plans victims.  Furthermore, during the operation of the scheme, Defendants Litvin Law and Litvin Torrens knowingly permitted non-lawyers to control contacts with the consumers from the initial cold-call to selling the fee and membership agreement and throughout the consumers' engagement in the scheme and with the firms.  In many cases, consumers enrolled in the Legal Plans scheme paid "membership" fees for several months before ever speaking with a lawyer or paralegal.

46.     Accordingly, each "contract" entered into with the Receivership Defendants, which formed the basis for the diversion of consumers' funds to Defendants Litvin Law and

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

Litvin Torrens, and ultimately Litvin and Torrens, was entered into in the state of Florida and each is illegal under Florida law.

47.     In Florida, illegal contracts are void *ab initio*, meaning that they never come into existence in the first place.

48.     Defendants' "contracts" with the Receivership Defendants amount to illegal fee sharing contracts and/or were entered into in connection with the unlicensed practice of law by Receivership Defendants.  Thus they are each and collectively void *ab initio*.

49.     Accordingly, Defendants Litvin Law and Litvin Torrens have no right to the funds diverted to them through the perpetuation of Receivership Defendants' Legal Plans scheme.

**C.      Receivership Defendants' Received No Value From Defendants.**

50.     Defendants Litvin Law and Litvin Torrens are law firms that knew or should have known that their contracts with Receivership Defendants were void *ab initio*.

51.     Defendants Litvin Law and Litvin Torrens, nonetheless, took payment from Receivership Defendants for the purposes of carrying out the Legal Plans scheme and for purposes of unjustly enriching themselves at the expense of Receivership Defendants and the consumers caught in the Legal Plans scheme.

52.     At all material times, Defendants Litvin Law and Litvin Torrens engaged in the transferring of Receivership Defendants' and consumers' funds for purposes of perpetuating a scheme of criminally illegal unlicensed practice of law and illegal legal fee generation.

53.     The payments made to Defendants Litvin Law and Litvin Torrens did not relate to any legitimate operation of Receivership Defendants or confer any benefit upon, or provide value to them.

**BERGER SINGERMAN**
attorneys at law        *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

54.     Accordingly, the Receiver demanded for turnover of Receivership Defendants' assets from Defendants Litvin Law and Litvin Torrens.  On April 29, 2013, the Receiver, by and through counsel, made a demand on Defendants Litvin Law and Litvin Torrens for the full amount of Receivership assets transferred by Meracord to the Citibank accounts from which Defendants Litvin Law and Litvin Torrens received transfers of the Receivership Defendants' assets.

55.     After further investigation, according to the Receiver's bank records it was determined that $2,517,315.00 was transferred to Defendant Litvin Law during the operation of the Legal Plans scheme.  *See* Exhibit A.

56.     According to records produced by Defendants, Defendant Litvin Law was also wired $20,900 from accounts established at Meracord designated for the Receivership Defendants.  *See* Exhibit B.

57.     After further investigation, according to the Receiver's bank records it was determined that $2,334,448.40 was transferred to Defendant Litvin Torrens during the operation of the Legal Plans scheme.  *See* Exhibit C.

58.     According to records produced by Defendants, Defendant Litvin Torrens was also wired $39,450 from accounts established at Meracord designated for the Receivership Defendants.  *See* Exhibit D.

59.     Subject to a final reconciliation, the aggregate of the aforementioned transfers confirm that, at a minimum, Defendant Litvin Law and Defendant Litvin Torrens together received transfers of $4,912,113.40 of the Receivership Defendants' assets.

60.     The Receiver brings this action against Defendants Litvin Law and Litvin Torrens, and Litvin and Torrens individually, on behalf of the Receivership Defendants and their

**BERGER SINGERMAN**
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

creditors and consumer victims to recover the fraudulent transfers of Receivership Defendants' assets made to Defendants, damages from the Defendants' consumer fraud and Defendants' negligent conduct, and to equitably redistribute the Receivership assets to consumer victims as authorized by the Receivership Orders.

## COUNT I – TURNOVER
### (Litvin Law Firm, P.C. and Litvin, Torrens & Associates, PLLC)

61.     The Receiver realleges the allegations set forth in paragraphs 1 through 60, and incorporates those allegations by reference.

62.     Pursuant to the authority granted the Receiver by and through the Receivership Orders in the FTC Case, the Receiver is vested with exclusive control of the Receivership Defendants' assets pursuant to Section XVI. B., *et seq.*, of the Preliminary Injunction Order entered in the FTC Case. [D.E. 67, as amended by D.E. 156].

63.     Section XVIII. A. of the Preliminary Injunction Order sets forth that Defendants Litvin Law must turnover "All assets of the Receivership Defendants" to the Receiver:

### XVIII.

### DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that, to the extent not already done so pursuant to the TRO issued in this case, immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Receiver, Defendants and any other person or entity, including but not limited to financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Receiver:

A. All assets of the Receivership Defendants;

64.     Defendants Litvin Law and Litvin Torrens were served with the Receiver's demand for turnover of Receivership Defendants' assets.  On April 29, 2013, the Receiver, by and through counsel, made a demand on Defendants Litvin Law and Litvin Torrens for the full

amount of Receivership assets transferred by Meracord to the Citibank accounts from which Defendants Litvin Law and Litvin Torrens received transfers of the Receivership Defendants' assets.

65.     After further investigation, according to the Receiver's bank records it was determined that $2,517,315.00 was transferred to Defendant Litvin Law during the operation of the Legal Plans scheme.

66.     According to records produced by Defendants, Defendant Litvin Law was also wired $20,900 from accounts established at Meracord designated for the Receivership Defendants.

67.     After further investigation, according to the Receiver's bank records it was determined that $2,334,448.40 was transferred to Defendant Litvin Torrens during the operation of the Legal Plans scheme.

68.     According to records produced by Defendants, Defendant Litvin Torrens was also wired $39,450 from accounts established at Meracord designated for the Receivership Defendants.

69.     Subject to a final reconciliation, the aggregate of the aforementioned transfers confirm that, at a minimum, Defendant Litvin Law and Defendant Litvin Torrens together received transfers of $4,912,113.40 of the Receivership Defendants' assets.

70.     As of the date of this Complaint, Defendants Litvin Law and Litvin Torrens refuse to turnover any amount of the Receivership Defendants' assets to the Receiver.

71.     Accordingly, the Receiver seeks turnover of the Receivership Defendants' assets subject to the Receiver's control that Defendants Litvin Law and Litvin Torrens continue to hold, without claim of right, title or interest.

BERGER SINGERMAN
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

72.     By failing, after proper demand, to turn over Receivership Defendants' assets to the Receiver, Defendants Litvin Law and Litvin Torrens are in violation of the Preliminary Injunction Order.  FTC Case, [D.E. 67, as amended by D.E. 156].

73.     The Receiver is damaged by Defendants Litvin Law and Litvin Torrens failure to turnover Receivership Assets to the Receiver.

**COUNT II – AVOIDANCE OF FRAUDULENT TRANSFERS
UNDER 726.105(1)(A), FLORIDA STATUTES – ACTUAL FRAUD**
**(Litvin Law Firm, P.C.)**

74.     The Receiver realleges the allegations set forth in paragraphs 1 through 60 and incorporates those allegations by reference.

75.     From January 2011 through September 2012, Receivership Defendants and/or Meracord made transfers to Litvin Law within the four year period prior to the date of this Complaint (the "Four Year Transfers to Litvin Law").  Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendant Litvin Law, the Four Year Transfers to Litvin Law are attached hereto as Exhibits "A" (transfers from certain Receivership Defendants' bank accounts to Litvin Law) and "B" (payment records produced by Litvin Law of transfers from Meracord to Litvin Law).

76.     The Four Year Transfers to Litvin Law were made with the actual intent to hinder, delay or defraud a creditor inasmuch as the Four Year Transfers to Litvin Law did not benefit of the Receivership Defendants.  Defendant Litvin Law benefitted from them to the detriment of consumer victims and Receivership Defendants such that Receivership Defendants could not or cannot repay or refund consumer victims of the Legal Plans scheme.

77.     At the time of each transfer reflected on Exhibits A and B, there existed at least one existing, actual creditor of the Receivership Defendants that was harmed by the transfer.

**BERGER SINGERMAN**
attorneys at law                 *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

78.     In determining intent, courts look to whether any of the "Badges of Fraud" listed in § 726.105(2), Florida Statutes, are present.  In the Transfers at issue in the instant action:

    a.  the Receivership Defendants, in concert with Defendant Litvin Law, concealed the Transfers from consumers by transferring consumers' payments drawn by payment processor Meracord to Receivership Defendants and then to Defendant Litvin Law;

    b.  the Receivership Defendants received, if any, consideration that was not reasonably equivalent of the funds transferred;

    c.  the Receivership Defendants absconded by repeatedly changing the names of the Legal Plans scheme and the entities that operated it;

    d.  the Receivership Defendants removed or concealed assets by and between the Receivership Defendants entities, their affiliates and principals;

    e.  the Receivership Defendants were insolvent or became insolvent shortly after the Transfers because Receivership Defendants' liabilities to the consumer victims of the Legal Plans scheme exceeded their assets; and

    f.  the Transfers began shortly before or after substantial obligations to consumer victims and the Receivership Defendants were incurred.

79.     Equity requires that the funds transferred from Receivership Defendants to Defendant Litvin Law be set aside and paid to the Receiver to refund and/or compensate the consumer victims of the Legal Plans scheme.

80.     The Four Year Transfers to Litvin Law may be avoided under Section 726.105(1)(a) of the Florida Statutes.

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

### COUNT III – AVOIDANCE OF FRAUDULENT TRANSFERS
### UNDER 726.105(1)(B) FLORIDA STATUTES – CONSTRUCTIVE FRAUD
### (Litvin Law Firm, P.C.)

81.     The Receiver realleges the allegations set forth in paragraphs 1 through 60 and incorporates those allegations by reference.

82.     From January 2011 through September 2012, Receivership Defendants and/or Meracord made transfers to Litvin Law within the four year period prior to the date of this Complaint (the "Four Year Transfers to Litvin Law").   Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendant Litvin Law, the Receivership Defendants' bank account records together with the spreadsheet of the Transfers made directly from Meracord to Defendant Litvin Law, make up the Four Year Transfers to Litvin Law and are attached hereto as Exhibits A and B.

83.     The Receivership Defendants made the Four Year Transfers to Litvin Law described in Exhibits A and B without receiving reasonably equivalent value in exchange for the Four Year Transfers to Defendant Litvin Law because the transfers did not benefit of the Receivership Defendants.

84.     The Receivership Defendants engaged or were about to engage in a business or a transaction for which the remaining assets of the Receivership Defendants were unreasonably small in relation to its business or transaction.

85.     Alternatively, the Receivership Defendants intended to incur, or believed they would incur, debts that would be beyond their ability to pay as they became due.

86.     These transfers occurred at a time when Receivership Defendants were "insolvent", as that term is defined under the Florida Uniform Fraudulent Transfer Act, because Receivership Defendants' liabilities to the consumer victims of the Legal Plans scheme exceeded

**BERGER SINGERMAN**
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

their assets.  Defendant Litvin Law benefitted from them to the detriment of consumer victims and Receivership Defendants such that Receivership Defendants could not or cannot repay or refund consumer victims of the Legal Plans scheme.

87.     At the time of each Transfer reflected on Exhibits A and B there existed at least one existing, actual creditor of the Receivership Defendants that was harmed by the Transfers.

88.     The Four Year Transfers to Defendant Litvin Law may be avoided under Section 726.105(1)(b) of the Florida Statutes.

### COUNT IV – AVOIDANCE OF FRAUDULENT TRANSFERS UNDER 726.106(1) FLORIDA STATUTES – CONSTRUCTIVE FRAUD
(Litvin Law Firm, P.C.)

89.     The Receiver realleges the allegations set forth in paragraphs 1 through 60 and incorporates those allegations by reference.

90.     From January 2011 through September 2012, Receivership Defendants and/or Meracord made transfers to Litvin Law within the four year period prior to the date of this Complaint (the "Four Year Transfers to Litvin Law").   Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendant Litvin Law, the Four Year Transfers to Litvin Law are attached hereto as Exhibits A and B.

91.     The Receivership Defendants made the Four Year Transfers to Litvin Law referenced on attached Exhibits A and B without receiving reasonably equivalent value in exchange for the Four Year Transfers to Litvin Law because the transfers did not benefit the Receivership Defendants.  Defendant Litvin Law benefitted from the Four Year Transfers to Litvin Law to the detriment of consumer victims and Receivership Defendants such that Receivership Defendants could not or cannot repay or refund consumer victims of the Legal Plans scheme.

**BERGER SINGERMAN**
attorneys at law          *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

92.     At the time of each of the Four Year Transfers to Litvin Law reflected on Exhibits A and B there existed at least one existing, actual creditor of the Receivership Defendants that was harmed by the transfer.

93.     The Four Year Transfers to Litvin Law may be avoided under Section 726.106(1) of the Florida Statutes.

**COUNT V – AVOIDANCE OF FRAUDULENT TRANSFERS
UNDER 726.105(1)(A), FLORIDA STATUTES – ACTUAL FRAUD**
**(Litvin Torrens & Associates, PLLC)**

94.     The Receiver realleges the allegations set forth in paragraphs 1 through 60 and incorporates those allegations by reference.

95.     From January 2011 through September 2012, Receivership Defendants and/or Meracord made transfers to Litvin Torrens within the four year period prior to the date of this Complaint (the "Four Year Transfers to Litvin Torrens").   Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendant Litvin Torrens, the Four Year Transfers to Litvin Torrens are attached hereto as Exhibits "C" (transfers from certain Receivership Defendants' bank accounts to Litvin Torrens) and "D" (payment records produced by Litvin Torrens of transfers from Meracord to Litvin Torrens).

96.     The Four Year Transfers to Litvin Torrens were made with the actual intent to hinder, delay or defraud a creditor inasmuch as the Four Year Transfers to Litvin Torrens did not benefit of the Receivership Defendants.   Defendant Litvin Torrens benefitted from them to the detriment of consumer victims and Receivership Defendants such that Receivership Defendants could not or cannot repay or refund consumer victims of the Legal Plans scheme.

97.     At the time of each transfer reflected on Exhibits C and D, there existed at least one existing, actual creditor of the Receivership Defendants that was harmed by the transfer.

**BERGER SINGERMAN**
attorneys at law          *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

98.     In determining intent, courts look to whether any of the "Badges of Fraud" listed in § 726.105(2), Florida Statutes, are present.  In the Transfers at issue in the instant action:

a.  the Receivership Defendants, in concert with Defendant Litvin Torrens, concealed the Transfers from consumers by transferring consumers' payments drawn by payment processor Meracord to Receivership Defendants and then to Defendant Litvin Torrens;

b.  the Receivership Defendants received, if any, consideration that was not reasonably equivalent of the funds transferred;

c.  the Receivership Defendants absconded by repeatedly changing the names of the Legal Plans scheme and the entities that operated it;

d.  the Receivership Defendants removed or concealed assets by and between the Receivership Defendants entities, their affiliates and principals;

e.  the Receivership Defendants were insolvent or became insolvent shortly after the Transfers because Receivership Defendants' liabilities to the consumer victims of the Legal Plans scheme exceeded their assets; and

f.  the Transfers began shortly before or after substantial obligations to consumer victims and the Receivership Defendants were incurred.

99.     Equity requires that the funds transferred from Receivership Defendants to Defendant Litvin Torrens be set aside and paid to the Receiver to refund and/or compensate the consumer victims of the Legal Plans scheme.

100.    The Four Year Transfers to Litvin Torrens may be avoided under Section 726.105(1)(a) of the Florida Statutes.

## COUNT VI – AVOIDANCE OF FRAUDULENT TRANSFERS
## UNDER 726.105(1)(B) FLORIDA STATUTES – CONSTRUCTIVE FRAUD
### (Litvin Torrens & Associates, PLLC)

101.    The Receiver realleges the allegations set forth in paragraphs 1 through 60 and incorporates those allegations by reference.

102.    From January 2011 through September 2012, Receivership Defendants and/or Meracord made transfers to Litvin Torrens within the four year period prior to the date of this Complaint (the "Four Year Transfers to Litvin Torrens").    Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendant Litvin Torrens, the Receivership Defendants' bank account records together with the spreadsheet of the Transfers made directly from Meracord to Defendant Litvin Torrens make up the Four Year Transfers to Litvin Torrens and are attached hereto as Exhibits C and D.

103.    The Receivership Defendants made the Four Year Transfers to Litvin Torrens described in Exhibits C and D without receiving reasonably equivalent value in exchange for the Four Year Transfers to Defendant Litvin Torrens because the transfers did not benefit of the Receivership Defendants.

104.    The Receivership Defendants engaged or were about to engage in a business or a transaction for which the remaining assets of the Receivership Defendants were unreasonably small in relation to its business or transaction.

105.    Alternatively, the Receivership Defendants intended to incur, or believed they would incur, debts that would be beyond their ability to pay as they became due.

106.    These transfers occurred at a time when Receivership Defendants were "insolvent", as that term is defined under the Florida Uniform Fraudulent Transfer Act, because Receivership Defendants' liabilities to the consumer victims of the Legal Plans scheme exceeded

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

their assets.  Defendant Litvin Torrens benefitted from the Four Year Transfers to Litvin Torrens to the detriment of consumer victims and Receivership Defendants such that Receivership Defendants could not or cannot repay or refund consumer victims of the Legal Plans scheme.

107.    At the time of each Four Year Transfers to Litvin Torrens reflected on Exhibits C and D there existed at least one existing, actual creditor of the Receivership Defendants that was harmed by the Four Year Transfers to Litvin Torrens.

108.    The Four Year Transfers to Litvin Torrens may be avoided under Section 726.105(1)(b) of the Florida Statutes.

**COUNT VII – AVOIDANCE OF FRAUDULENT TRANSFERS**
**UNDER 726.106(1) FLORIDA STATUTES – CONSTRUCTIVE FRAUD**
**(Litvin Torrens & Associates, PLLC)**

109.    The Receiver realleges the allegations set forth in paragraphs 1 through 60 and incorporates those allegations by reference.

110.    From January 2011 through September 2012, Receivership Defendants and/or Meracord made transfers to Litvin Torrens within the four year period prior to the date of this Complaint (the "Four Year Transfers to Litvin Torrens").  Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendant Litvin Torrens, the Four Year Transfers to Litvin Torrens are attached hereto as Exhibits C and D.

111.    The Receivership Defendants made the Four Year Transfers to Litvin Torrens referenced on attached Exhibits C and D without receiving reasonably equivalent value in exchange for the Four Year Transfers to Litvin Torrens because the transfers did not benefit the Receivership Defendants.  Defendant Litvin Torrens benefitted from them to the detriment of consumer victims and Receivership Defendants such that Receivership Defendants could not or cannot repay or refund consumer victims of the Legal Plans scheme.

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

112.    At the time of each of the Four Year Transfers to Litvin Torrens reflected on Exhibits C and D there existed at least one existing, actual creditor of the Receivership Defendants that was harmed by the transfer.

113.    The Four Year Transfers to Litvin Torrens may be avoided under Section 726.106(1) of the Florida Statutes.

**COUNT VIII – AVOIDANCE OF FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 726.108 AND 726.109(2)(b) OF THE FLORIDA STATUTES**
**(Gennady Litvin)**

114.    The Receiver realleges the allegations set forth in paragraphs 1 through 60, and 74 through 113, and incorporates those allegations by reference.

115.    Receivership Defendants and/or Meracord made transfers to Defendants Litvin Law and Litvin Torrens within the four year period prior to the date of this Complaint (the "Four Year Transfers to Defendants Litvin Law and Litvin Torrens").   ").   Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendants Litvin Law and Litvin Torrens, the Receivership Defendants' bank account records together with the spreadsheets of the Transfers made directly from Meracord to Defendant Litvin Law and Litvin Torrens, the Four Year Transfers to Defendants Litvin Law and Litvin Torrens are attached hereto as Exhibits A, B, C, and D.

116.    The Four Year Transfers to Defendants Litvin Law and Litvin Torrens are voidable pursuant to the Florida Uniform Fraudulent Transfers Act, Sec. 729.101-729.112, *et seq*. Fla. Stat.

117.    Defendant Litvin is the owner and insider of Defendants Litvin Law and Litvin Torrens and is a subsequent transferee of the Four Year Transfers to Defendants Litvin Law and Litvin Torrens.

**BERGER SINGERMAN**
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

118.    Defendant Litvin took some or all of the Four Year Transfers to Defendants Litvin Law and Litvin Torrens with knowledge of the voidability of the Four Year Transfers to Defendants Litvin Law and Litvin Torrens.

119.    The Receiver is entitled to judgment against Defendant Litvin pursuant to Sections 729.108 and 729.109(2)(b), Fla. Stat. for the avoidance of the Four Year Transfers to Defendants Litvin Law and Litvin Torrens in the amount necessary to satisfy the Receiver's claim.

### COUNT IX – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTIONS 726.108 AND 726.109(2)(b) OF THE FLORIDA STATUTES
(Luis A. Torrens)

120.    The Receiver realleges the allegations set forth in paragraphs 1 through 60, and 94 through 113, and incorporates those allegations by reference.

121.    Receivership Defendants and/or Meracord made transfers to Litvin Torrens within the four year period prior to the date of this Complaint (the "Four Year Transfers to Defendant Litvin Torrens").  Although the Receiver is still investigating the complete scope of the improper distributions provided to Defendant Litvin Torrens, the Receivership Defendants' bank account records together with the spreadsheet of the Transfers made directly from Meracord to Defendant Litvin Torrens make up the Four Year Transfers to Litvin Torrens and are attached hereto as Exhibits C and D.

122.    The Four Year Transfers to Defendant Litvin Torrens are voidable pursuant to the Florida Uniform Fraudulent Transfers Act, Sec. 729.101-729.112, *et seq.* Fla. Stat.

123.    Defendant Torrens is the owner and insider of Defendant Litvin Torrens and is a subsequent transferee of the Four Year Transfers to Defendant Litvin Torrens.

BERGER SINGERMAN
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

124.     Defendant Torrens took some or all of the Four Year Transfers to Defendant Litvin Torrens with knowledge of the voidability of the Four Year Transfers to Defendant Litvin Torrens.

125.     The Receiver is entitled to judgment against Defendant Torrens pursuant to Sections 729.108 and 729.109(2)(b), Fla. Stat. for the avoidance of the Four Year Transfers to Defendant Litvin Torrens in the amount necessary to satisfy the Receiver's claim.

## COUNT VIII – UNJUST ENRICHMENT
### (All Defendants)

126.     The Receiver realleges the allegations set forth in paragraphs 1 through 60, and 74 through 125, and incorporates those allegations by reference.

127.     As detailed above, Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens received significant distributions from Receivership Defendants, directly or indirectly.  Those monies have neither been repaid to the Receivership Defendants, nor have Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens provided services or goods to the Receivership Defendants in exchange for those monies.

128.     Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens knowingly and voluntarily accepted and retained a benefit when the funds of the Receivership Defendants, procured through the operation of the Legal Plans scheme, were transferred to them.

129.     The circumstances present in this action render Defendants' retention of those benefits inequitable unless Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens pay the Receiver the value of the benefits received.

130.     Thus, Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens have been unjustly enriched at the expense of the Receivership Defendants and their creditors and consumer victims of the Legal Plans scheme, and the Receivership Defendants, via the Receiver,

BERGER SINGERMAN
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

are entitled to judgment in the amount of the unjust enrichment taken by Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens.

131.    Alternatively, the Receivership Defendants are entitled to a constructive trust for the amount of the unjust enrichment taken by Defendants given that it would be inequitable for Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens to retain possession of these monies given their material participation in the perpetuation of the Legal Plans scheme to defraud consumers.

**COUNT IX – DISGORGEMENT OF UNLAWFUL PROFITS**
**(All Defendants)**

132.    The Receiver realleges the allegations set forth in paragraphs 1 through 60, and 74 through 125, and incorporates those allegations by reference.

133.    As detailed above, Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens received significant distributions from Receivership Defendants.

134.    The monies transferred to Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens, directly or indirectly, by Receivership Defendants and/or Meracord have not been repaid to the Receivership Defendants nor have Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens provided goods or services to the Receivership Defendants in exchange for the transfer of these monies.

135.    On information and belief, the monies transferred to Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens appear to have belonged to the Receivership Defendants, their creditors and the consumer victims of the Legal Plans scheme, and continue to be wrongfully retained by Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens. As such, the Receivership Defendants, through the Receiver, are entitled to disgorgement of those monies from Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens so that the monies may be

**BERGER SINGERMAN**
attorneys at law                     *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

returned to the defrauded consumer victims of the Legal Plans scheme to which Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens were material co-conspirators.

**COUNT X – COMMON LAW FRAUD**
**(All Defendants)**

136.    The Receiver realleges the allegations set forth in paragraphs 1 through 60 and incorporates those allegations by reference.

137.    Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens each and collectively knowingly misrepresented to desperate consumers that Defendants would save consumers' homes from default and/or foreclosure by lenders and/or that participation in the Legal Plans scheme would secure a loan modification and lower the consumers' monthly mortgage payments.

138.    The marketing materials and sales scripts employed by Receivership Defendants, from which Defendants materially and knowingly benefited, made promises to consumers that were either false at the time they were made or made without any intention of performing or with the positive intention not to be performed.

139.    At all material times, Defendants and Receivership Defendants made false representations to consumers about the skill, qualifications and expertise of the "network attorneys" participating in the Legal Plans scheme.

140.    At all material times, Defendants and Receivership Defendants made false representations to clients about the value, purpose, need and/or relevance of the "audits" sold to consumers who became part of the Legal Plans scheme in order to perpetuate the consumers' ongoing membership in the scheme.

141.    At all material times, Defendants and Receivership Defendants made false representations to consumers that participation in the Legal Plans scheme would save consumers

33

money in respect of their mortgage payments and/or that the consumer would receive title to his/her home free and clear.

142.    At all material times, Defendants and Receivership Defendants made false representations to consumers about the Legal Plans scheme giving consumers a false belief that their homes would be saved from foreclosure, they would receive a loan modification from their respective lenders and that they would receive "full-service legal representation" from Defendants Litvin Law and/or Litvin Torrens.

143.    At all material times, Defendants and Receivership Defendants made false representations to consumers about the level of client service that consumers would receive from Defendants.

144.    At all material times, Defendants and Receivership Defendants made false representations to consumers about the independence and qualifications "network attorneys" participating in the Legal Plans scheme.

145.    At all material times, Defendants and Receivership Defendants made false representations to consumers about the source and location of the legal work performed by "network attorneys" participating in the Legal Plans scheme.

146.    At all material times, Defendants and Receivership Defendants made false representations to consumers about the lawfulness of the Legal Plans scheme.

147.    At all material times, Defendants and Receivership Defendants made false representations to consumers that "all of your payments go into a trust account in your name and not even a penny will get disbursed until the service or product has been delivered."

148.    Defendants knew that the promises of mortgage modifications to consumers and "full-service legal representation" were false.  Defendants knew that Receivership Defendants

BERGER SINGERMAN
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

engaged in unlawful solicitations of prospective clients, and induced new and existing "members" to remain in the Legal Plans scheme through the use of oppressive marketing tactics upon which the consumers relied.

149.    Defendants knew that Receivership Defendants were violating the MARS Rules and assisted Receivership Defendants in attempting to circumvent the statutory prohibitions against charging upfront fees for mortgage modification services in violation of federal law.

150.    Defendants knew that consumers' monthly "membership" payments drawn from the members' bank accounts by Meracord were transferred to the Receivership Defendants immediately upon each monthly deposit, despite promises to consumers that "all of your payments go into a trust account in your name and not even a penny will get disbursed until the service or product has been delivered."

151.    Despite knowledge of false statements made by Receivership Defendants and Defendants to induce consumers to become and remain "members" of and pay monthly "membership" fees to Receivership Defendants and Defendants, Defendants willfully profited from these deceptions along with Receivership Defendants.

152.    In order to perpetuate the extensive consumer fraud that was the Legal Plans scheme, Defendants participated in the Legal Plans scheme and accepted payments from consumers who Defendants knew were ineligible for loan modifications.

153.    In order to perpetuate the extensive consumer fraud that was the Legal Plans scheme, Defendants participated in the Legal Plans scheme and accepted payments from consumers who Defendants knew were either not in default on their mortgage loans or not in need of foreclosure defense legal services.

BERGER SINGERMAN
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

154.    At all material times, consumers relied on the misrepresentations made by Defendants and Receivership Defendants to their detriment and at great cost to the homeowners in desperate financial situations.   In reliance on the truth of the representations made by Defendants and Receivership Defendants, consumers stopped paying their mortgages opting instead to pay for Legal Plans, missed mortgage payments, chose not to retain competent counsel to defend them in court or with their lender(s), were forced to file for bankruptcy without the assistance of counsel, and in some cases lost their homes.

155.    Together, Defendants, Receivership Defendants and their affiliates, extracted more than $26 million from consumer victims across the country.

156.    The Receiver brings this count on behalf of the consumer victims of the Legal Plans scheme and against Defendants for recovery of damages arising directly from Defendants' conduct and material participation in the consumer fraud known as the Legal Plans scheme.

**COUNT XI – NEGLIGENT MISREPRESENTATION**
**(All Defendants)**

157.    The Receiver realleges the allegations set forth in paragraphs 1 through 60, and incorporates those allegations by reference.

158.    Defendants negligently misrepresented to consumers that participation and membership in the Legal Plans scheme would save the their homes from default and/or foreclosure by lenders and/or that participation in the Legal Plans scheme would secure a loan modification and lower the consumers' monthly mortgage payments and that consumers would receive "full-service legal representation" from "network attorneys" including Defendants Litvin Law and Litvin Torrens.

159.    At all material times, marketing materials and sales scripts employed by Receivership Defendants made promises to consumers that were either false at the time they

**BERGER SINGERMAN**
attorneys at law        *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

were made or made without any intention of performing or with the positive intention not to be performed.  In several cases, consumers who were promised  "full-service legal representation" were instructed by personnel at Defendants Litvin Law or Litvin Torrens to file for bankruptcy on their own, without any assistance from Defendants, or informed that no attorney was available to help them on the eve of foreclosure.

160.    Defendants were negligent in failing to ascertain whether the representations made to consumers by Receivership Defendants, with whom Defendants conspired, were false.

161.    At all material times, Receivership Defendants violated the MARS Rules and attempted to circumvent the statutory prohibitions against upfront fees for mortgage modification services.  Defendants were negligent in failing to ascertain whether the Legal Plans scheme was unlawful.

162.    At all material times, Receivership Defendants promised mortgage modifications to consumers, engaged in unlawful solicitations of prospective clients, and induced new and existing "members" of to remain in the Legal Plans scheme through the use of oppressive marketing tactics upon which the consumers relied.

163.    At all material times, consumers relied on the representations made by Defendants and Receivership Defendants to their detriment and at great cost to the homeowners in desperate financial situations.

164.    Defendants materially participated in the Legal Plans scheme to induce consumers to become "members" and pay monthly "membership" fees from which Defendants profited along with Receivership Defendants.

165.    At all material times, Defendants were negligent in failing to ascertain whether representations made to consumers that "all of your payments go into a trust account in your

BERGER SINGERMAN
attorneys at law      *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

name and not even a penny will get disbursed until the service or product has been delivered"
were false.

166.    As duly licensed attorneys and law firms, Defendants were obligated to protect
their clients from the unlawful Legal Plans scheme with which Defendants materially
participated.

167.    At all material times, Defendants were negligent in failing to ascertain whether
they were assisting with and contributing to the Receivership Defendants' unlicensed practice of
law.

168.    At all material times, Defendants were negligent in failing to ascertain whether
the representations made to consumers about the Legal Plans products and services by
Receivership Defendants were illegal.

169.    Together, Defendants, Receivership Defendants and their affiliates, extracted
more than $26 million from consumer victims across the country.

170.    The Receiver brings this count on behalf of the consumer victims of the Legal
Plans scheme and against Defendants for recovery of damages arising directly from Defendants'
negligence.

<u>**COUNT XII - CIVIL CONSPIRACY**</u>
**(All Defendants)**

171.    The Receiver realleges the allegations set forth in paragraphs 1 through 60 and
incorporates those allegations by reference.

172.    Defendants conspired with Derek Radzikowski, his co-conspirators, and the
Receivership Defendants' employees, directors and officers to commit the wrongful conduct
described herein, including agreeing to attempt to circumvent the MARS Rule through unlawful

**BERGER SINGERMAN**
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

means, breaching fiduciary duties, participating in a fraudulent scheme, fraudulently transferring Receivership Defendants funds, and engaging in common law fraud.

173. Alternatively, Defendants agreed with Derek Radzikowski, his co-conspirators, and the Receivership Defendants' employees, directors and officers to perform the lawful act of providing legal services through the unlawful means associated with the Legal Plans scheme.

174. Defendants are responsible for all wrongdoing done by each of the other members of the conspiracy, including Defendant Radzikowski, Jason Desmond, Lazaro Dinh, Andrew Primavera, Kim Landolfi, Christopher Edwards, the Receivership Defendants, and others, in furtherance of the unlawful conspiracy and enterprise. In particular, Defendants are responsible for Derek Radzikowski's and his coconspirators' misappropriation of millions of dollars in assets from Receivership Defendants and therefore from the Receiver, and from the consumer members of the Legal Plans schemes who are owed compensation from the Receivership Defendants.

175. There was a meeting of the minds between Litvin, Torrens, Radzikowski, and others as to the need to conceal the true nature and activities (particularly the legality of the Legal Plans scheme) and to evade regulatory scrutiny. This meeting of the minds grew to include other participants, including affiliates who joined the conspiracy and had a meeting of the minds with Derek Radzikowski and his co-conspirators in 2010, and this meeting of the minds continued while the Legal Plans scheme was employed. In this meeting of the minds, Defendants agreed to assist Radzikowski and the Receivership Defendants in concealing the fraudulent nature of its activities by evading regulatory scrutiny from 2010 through September, 2012, which concealment was crucial and central to the perpetuation of the Legal Plans scheme. Further, Defendants were actively involved in furthering the objective of this conspiracy during the expansion of the Legal Plans scheme into other states beyond Florida, New York and New

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

Jersey.  Defendants therefore knowingly combined together with Radzikowski and the co-conspirators in assisting the Receivership Defendants to frustrate the investigatory efforts of the FTC and other U.S. regulatory bodies and agencies so as to enable the Legal Plans scheme.

176.    As described herein, Defendants took various overt acts designed to assist Receivership Defendants to accomplish the goal of shielding Receivership Defendants from regulatory scrutiny and therefore further the Legal Plans scheme. These overt acts in furtherance of the conspiracy included crafting language to attempt to skirt the MARS Rules, and encouraging others to otherwise mislead and deceive consumers.  By doing so, Defendants acted pursuant to their meeting of the minds with Radzikowski, Desmond, Dinh and other co-conspirators in pursuit of the common purpose of the conspiracy: to conceal the fraudulent nature of the Receivership Defendants' activities and shield Receivership Defendants from regulatory scrutiny to allow Receivership Defendants and Defendants to continue perpetuating the Legal Plans scheme.

177.    Defendants' conspiracy with these co-conspirators to breach fiduciary duties, participate in a fraudulent scheme, fraudulently transfer assets, and convert the Receivership Defendants' property is a proximate cause of actual damages to Receivership Defendants, and therefore the Receiver, and consumer victims.

178.    Defendants' actions in furthering the conspiracy to conceal, hinder and obstruct regulatory investigations were taken during the conspiracy's operation. Indeed, Defendants' actions were taken to protect the Legal Plans scheme and to avoid regulatory intervention so that the Legal Plans scheme could continue and Receivership Defendants could continue paying Defendants from consumer payments.  Therefore, Defendants' actions were part of a continuing

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

activity that was illegal in nature and essential to furthering the survival of the Legal Plans scheme conspiracy.

179.    But for the overt acts taken by members of the conspiracy to further the conspiracy's objectives as described herein, Defendants, Receivership Defendants and Radzikowski and his co-conspirators would not have been able to execute the Legal Plans scheme, and cause millions of dollars in damages to the Receivership Defendants, and therefore to the Receiver, and to those consumers to whom the Receivership Defendants owe substantial compensation.

180.    But for the overt acts taken by members of the conspiracy to further the conspiracy's objectives, the Receivership Defendants' as well as the consumer victims' damages would have been avoided.

181.    The Receiver brings this action to recover damages from Defendants as co-conspirators in the civil conspiracy known as Legal Plans.

## COUNT XIII – ACCOUNTING
### (All Defendants)

182.    The Receiver realleges the allegations set forth in paragraphs 1 through 60, and incorporates those allegations by reference.

183.    Although the Receiver has been able to discover the transfers documented in Exhibits A, B, C, and D, the complex nature and scope of the various Receivership Defendants' accounts and the transfers to Defendants Litvin Law and Litvin Torrens, coupled with the inherently fraudulent intent behind the Legal Plans scheme, have left the Receiver with a need for additional discovery as to other potential transfers made to Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens, directly and/or indirectly.

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

184.     The Receiver has no adequate remedy at law to obtain that information outside of an accounting.

185.     Accordingly, the Receiver is entitled to an equitable accounting of Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens.

**WHEREFORE**, the Receiver respectfully requests the Court enter a Judgment:

a.     For the turnover of the Receivership Defendants' assets from Defendants;

b.     For damages arising from Defendants' common law fraud in an amount to be determined at trial;

c.     For damages arising from Defendants' negligent misrepresentations in an amount to be determined at trial;

d.     Declaring the Four Year Transfers to Litvin Law and Litvin Torrens to have been fraudulent transfers pursuant to Section 726.105(1)(a), Section 726.105(1)(b) and/or Section 726.106(1) of the Florida Statutes;

e.     Avoiding the Four Year Transfers to Litvin Law and Litvin Torrens as fraudulent transfers in violation of Section 726.105(1)(a), Section 726.105(1)(b) and/or Section 726.106(1) of the Florida Statutes;

f.     For damages against Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens, in the amount of the Four Year Transfers to Litvin Law and Litvin Torrens;

g.     For an order requiring Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens to pay the Receivership Defendants, through the Receiver, the total amount of the Four Year Transfers to Litvin Law and Litvin Torrens;

h.     For an order disgorging from Defendants Litvin Law, Litvin Torrens, Litvin, and Torrens the total amount of the monies unjustly paid to them by and through the operation of the Legal Plans scheme;

42

i.      For a constructive trust in the amount of the Four Year Transfers given the inequities associated with Defendants' Litvin Law, Litvin Torrens, Litvin, and Torrens retaining possession of these monies;

j.      For damages from Defendants' Litvin Law, Litvin Torrens, Litvin, and Torrens participation in the civil conspiracy in an amount to be determined at trial;

k.      For an accounting;

l.      For costs and expenses of suit, including reasonable attorneys' fees, and

m.      For such other and further relief as the Court may deem just and proper.

**DATED** this 16th day of May, 2013.

Respectfully submitted,

BERGER SINGERMAN LLP
Attorneys for the Receiver, Charles H. Lichtman

By:  _/s/ Gavin C. Gaukroger_____
       Gavin C. Gaukroger
       ggaukroger@bergersingerman.com
       Berger Singerman LLP
       350 East Las Olas Blvd.
       Suite 1000
       Fort Lauderdale, Florida 33301
       Main Line: (954) 525-9900
       Facsimile: (954) 523-2872

4855948

**BERGER SINGERMAN**
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*