# COMPOSITE

# EXHIBIT E

*Charles H. Lichtman vs. Litvin Law Firm P.C., et al.*
*Case No. 13-CV-61119-Marra/Matthewman*

Exhibit to Amended Complaint filed on 5/31/13
Payment Records Produced by Litvin Torrens of Transfers from Meracord to Litvin Torrens


EXHIBIT
1
3/28/13 CS
PENGAD 800-631-6989

# SERVICE CONTRACT

This Agreement is made and entered into this 22nd day of October, 2010, by and between **Legal Servicing & Billing Partners, LLC**, with its primary business location at _____ hereinafter referred to as the "Servicing Agent", and LITVIN LAW FIRM, P.C., with its primary business location at 1550 Bath Avenue, Brooklyn, NY 11228, hereinafter referred to as the "Network Attorney".

WITNESSETH:

WHEREAS, the Network Attorney holds all licenses required to perform the services herein agreed to be performed and maintains an office, properly equipped and staffed by employees suitable to render the services contracted for herein; and has a professional liability insurance policy issued for an amount of no less than $100,000.00, and to attach to this agreement a copy of the declaration page of said policy (policy has been applied for); and

WHEREAS, the Servicing Agent desires to have the Network Attorney to represent clients of the Servicing Agent's legal membership programs (Consumer Legal Plans & Freedom Legal Plans), hereinafter referred to as the "Clients".

WHEREAS, the Network Attorney desires to accept such responsibility and to use his good faith efforts to provide quality legal representation for the Servicing Agent's Clients;

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, the Servicing Agent and Network Attorney agree as follows:

1. All "WHEREAS" clauses set out hereinabove are hereinafter incorporated by reference.

2. The Servicing Agent represents and warrants that he is the exclusive Servicing Agent of the Clients and that he has good right and lawful authority to introduce said Clients to the Network Attorney, and that said Clients is free of encumbrances and not subject to limitation of any kind.

3. In consideration of the Agreement of the Network Attorney to list and use its good faith efforts to offer legal representation for the Clients of the Servicing Agent, and the further Agreement of the Network Attorney to defend the Clients against any of the many legal plans offered by Legal Plan provider (Mortgage Foreclosure and/or Modification as well as pre-foreclosure), the Servicing Agent hereby gives the Network Attorney the exclusive right to represent the Clients at the price and upon the terms as are set out in Exhibit "A", attached hereto and made a part hereof by reference, or at any lower price and upon such different terms as may be hereinafter accepted by the Servicing Agent, without regard to the race, creed, color or place of national origin of any purchaser.

4. The term of this Agreement shall be five (5) years, beginning on the date and execution hereof by both parties, and ending on the _____ day _____ of **2015**, unless extended by the parties.

5. It is expressly stated and agreed to by the parties that this Agreement in no way guarantees the success of the Clients' case; however, the Network Attorney does guarantee that it will use its continued best efforts to represent same during the term of this Agreement. Network Attorney agrees to offer a free consultation and review of all documents necessary to offer competent legal advice, at no charge to a Client that chooses that Network Attorney in a Pre-Foreclosure Plan. It is the responsibility of the Legal Plans providers to provide such analysis at their expense if the client is in a Pre-Foreclosure Plan. If a Client does not have a forensic loan analysis or is enrolled in a full Foreclosure Defense plan, that Client will not be charged extra to obtain such an analysis, it is the responsibility of the Network Attorney to pay for this analysis if it is needed to defend that Clients' case.

6. The Servicing Agent may use the name of the Network Attorney in connection with marketing or advertising to its Clients. The Servicing agent may also use the name of the Network Attorney for marketing and advertizing on the legal plans' websites. Any and all advertising and promotions made to the public or members of Servicing Agency shall first be approved by the Network Attorney, prior to any form of publication whatsoever.

7. In the event that any one or more of the provisions of this Agreement shall for any reason be held to be invalid, such invalidity shall not affect any other provision of this Agreement.

8. This Agreement contains the entire agreement of the parties and no oral statements or prior agreements shall have any force and effect. This Agreement shall not be modified except by a writing executed by both parties hereto.

9. This agreement and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Florida. All disputes arising out of this Agreement that are not resolvable by good faith negotiations by the parties, shall be submitted to binding arbitration under the auspices of the American Arbitration Association (the "AAA") at its nearest location to Ft. Lauderdale, Florida and shall be settled by arbitration under the rules of the AAA then in effect. In so agreeing, the parties expressly waive their right, if any, to a trial by jury of these claims and further agree that the award of the arbitrator shall be final and binding upon them as though rendered by a court of law and enforceable in any court having jurisdiction over the same.

FTL-PLP-0011090

10. It is expressly agreed that this Agreement will not be recorded in any form in the public records of any county. It is also agreed that the information and every day operation of the legal plans will be kept as privileged information.

11. Servicing Agent shall not be liable to Network Attorney, whether in contract or tort, including negligence or strict liability theories, for any indirect, special, incidental or consequential damages of any kind, or loss of revenue or profit, loss of business, loss of goodwill, loss of opportunity or any other financial loss arising out of this Agreement or the Network Attorney's representation of the clients referred to Network Attorney by Servicing Agent.

12. Neither party may assign this Agreement without the express written consent of the other.

13. This Agreement takes precedence over any other agreement, including, but not limited to any engagement letter or retainer agreement, between Network Attorney and Client.

14. Servicing Agent hereby makes no representations, implied or express warranties as a part of this Agreement AND HEREBY SPECIFICALLY DISCLAIMS ANY IMPLIED OR EXPRESS WARRANTIES FOR MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Furthermore, Network Attorney agrees not to:

(a) Request any customers of any business then being conducted by Servicing Agent to curtail or cancel their business with Servicing Agent;
(b) Solicit, canvass or accept any business or transaction for any other person, firm or corporation or business similar to the business of the Servicing Agent, from any past or existing customers of the Servicing Agent;
(c) Induce or attempt to influence, any employee of Servicing Agent to terminate employment with Servicing Agent or to enter into any employment or other business relationship with any other person (including Attorney's) firm or corporation;
(d) Act or conduct its business in any manner which is contrary to the best interests of Servicing Agent.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written/Signed, sealed and delivered in the presence of:

"SERVICING AGENT"                          "NETWORK ATTORNEY"

Legal Servicing & Billing Partners          Litvin Law Firm, P.C.

By: _____          By: _____
                                                          Gennady Litvin, Esq.

Date: _____        Date: _10/22/10_____

FTL-PLP-0011091

**CLIENT SERVICING AUTHORIZATION FORM**
**Exhibit "A"**

This agreement is between LITVIN LAW FIRM, P.C. (Network Attorney) and Legal Servicing & Billing Partners (Servicing Agent).

Whereas Legal Servicing & Billing Partners is a client servicing company for Network Attorneys of certain Membership Legal Plans. As a Network Attorney we wish to engage the Servicing Agent as our client servicing agent, for the consideration of $25.00 per month per client per month, Servicing Agent will collect all Network Attorneys' payments, keep books and records, offer daily automatic deposits, a web portal to review clients' incoming payments, NSF reports etc, and offer some customer service but provide no legal advice to all of the Plans' clients.

After a Client's second payment has posted in our FDIC insured third party Paymaster, an electronic deposit will be sent to Network Attorney's designated checking account. The first payment will be retained by Servicing Agent for to cover processing and billing costs and expenses. It is agreed that that net fee amount that will be sent to Network Attorney per client is 400.00 per month. Servicing Agent will also be responsible for paying membership dues to its Membership Legal Plans. It is also agreed that in the event that a Client fails to make the required monthly payment, that client shall not be entitled to receive any services unless or until said payment has been transmitted to Network Attorney, and Network Attorney has the authority to withdraw from any litigation matter with the consent of said client who has failed to make the designated payment.

"SERVICING AGENT"

Legal Servicing & Billing Partners

By: _____

Date: _____

"NETWORK ATTORNEY"

Litvin Law Firm, P.C.

By: _____
      Gennady Litvin, Esq.

Date: 10/22/10



EXHIBIT
2
3/28/13 CS



## ATTORNEY AGREEMENT

The following is an Agreement between the undersigned attorney (hereinafter "Attorneys" or "Attorney") and Freedom Legal Plans, LLC (hereinafter "Freedom Legal Plans" or "FLP").

FLP is in the business of enrolling plan participants who may be members of corporations, large organizations, financial institutions, national associations, labor unions and individuals, who will join FLP to have access to legal services, specifically related to residential foreclosure, provided by participating attorneys at a discounted rate in accordance with the FLP fee schedule ("Legal Services").

The Attorney is engaged in the provision of Legal Services and agrees to participate in providing legal service to plan members of FLP who seek Legal Services in accordance with this Agreement.

In order to become a participating plan attorney of FLP, the Attorney acknowledges and agrees to abide by the following terms and conditions:

1:     Attorney agrees to charge plan members in accordance with FLP's fee schedule. Attorneys must also perform the following complementary services for Clients enrolled in the Network, Review and update of final will and testament, two letters or phone consultation per year to pre-foreclosure members but Attorney should take all reasonable efforts to reply to all Client communications within forty-eight (48) hours of receipt, review of a Forensic Loan Analysis provided by the Client, assistance in basic Estate Planning, Probate Issues, Deed or Title Review Services at a discount of twenty-five (25%) on any additional legal services not mentioned but available with Freedom Legal Plans.

2:     Attorney shall maintain a minimum of $100,000/$300,000 professional liability insurance and provide FLP with proof of same and annual updates thereafter.

3.     Attorney shall maintain good standing with their respective state licensing department and/or State Bar Association and shall maintain an active office for the practice of law. A home office may be listed as a secondary office.

### COST OF REFERRALS
**There is no cost for an attorney to participate in the network.**

### ATTORNEY FEES
Each participating attorney shall charge eligible FLP plan members in the amounts listed in the guidebook distributed by FLP to the Attorney ("Plan Member Guidebook"). The Plan Member Guidebook may have been reduced to a short document fee schedule for electronic transmission purposes. Both fee schedules contain the same information and can be referenced interchangeably. The Attorney acknowledges that there are simple legal services (with limiting definitions) which they may perform at no cost for members seeking such services. Should a question arise as to the interpretation of the fee schedule, FLP's final determination, in its sole discretion, shall be binding.

### ACCEPTANCE AND REJECTION OF A CLIENT – WITHDRAWAL FROM REPRESENTATION
Attorney shall accept each eligible client who requests services or is referred to Attorney and render prompt professional service to such client. The Attorney may, however, reject an eligible client on any reasonable grounds, but shall not reject any eligible client seeking services by reason of the amount of fees to which he or she may be entitled to charge under the Plan Member Guidebook. Attorney may not directly solicit or accept clients for Legal Services unless the client is referred to the Attorney by FLP. If Attorney rejects a client, the Attorney must encourage the client to contact FLP to seek an alternate participating Attorney. The Attorney may not later accept a client after rejecting the client, unless the client is referred to the Attorney by FLP. The Attorney's ethical codes prevail in all transactions. Therefore, an Attorney shall not withdraw from employment until he or she has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with all applicable laws and rules. In all cases, the Attorney is free to exercise their own independent professional judgment. All Attorneys must provide itemized billing statements to clients if they are requested.

### REFERRALS AND OTHER PRACTICE
Attorney may not participate or contract with any other pre-paid legal plan or system for the purpose of providing Legal Services during the Term and any legal service rendered must be charged at the reduced hourly rates or discounted monthly



rate established by FLP. This shall continue until such time as client is no longer eligible for plan nor plan participation. Attorneys shall respect the FLP's reduced applicable rates of 25% off the normal rates to all current members. FLP has no part in the attorney/client relationship after a defense case has started. FLP is not privy to and does not have access to client legal files or records once an Attorney is retained for that client. FLP does not, either expressly or implied, have any influence or interference with the professional independent judgment of Attorney. From time to time, FLP will require the Attorney for area of practice, time spent, and other miscellaneous generic information for statistical research purpose for the benefit of all plan members and Attorneys alike. Attorney is prohibited from referring a plan member to another attorney and must refer him or her back to FLP because non-participating attorneys are not bound by the fee schedule. FLP does not share in any legal fees collected by the Attorneys in accordance with this fee schedule. FLP collects a monthly membership fee from each client using a third party collector.

**EXPULSION AND RESIGNATION**
Attorney shall be deemed to have withdrawn from the plan automatically upon:

    1) any suspension or termination of a license to practice law in any state or
    2) is no longer regularly engaging in the practice of law or has retired from the practice of law.

The term of this Agreement shall be for a period of five (5) years from the date of execution hereof. At the end of the term, the Agreement shall automatically renew for additional five-year periods. This agreement may be terminated by either party by giving the other party written 60 day notification of such desire to terminate. In such case, the Attorney must continue to represent those clients already engaged at the fees quoted. No new referrals shall be made to Attorney upon termination. If a FLP member contacts Attorney for services after termination, the Attorney shall refer the member back to FLP Member Service Department for a new attorney assignment.

Any and all changes in address or personal practice information by the Attorney should be reported to FLP immediately so there is no lapse in participation status.

The undersigned attorney agrees to hold Freedom Legal Plans, its members, directors, officers, employees, agents, representatives, consultants, administrators and clients, harmless and indemnify and defend said parties from any and all liability, loss or damages whatsoever, including without limitation any offsets or demands, that such parties may sustain as a result of actions, claims, demands, costs, including attorney's fees, due to any actions or non-actions of Attorney or misrepresentation by Attorney to any third party. If a claim by a third party is made against FLP for which FLP is entitled to indemnification hereunder, FLP shall promptly notify Attorney of such claim. Attorney shall have twenty (20) days after receipt of the above-mentioned notice to undertake to conduct and control and at its sole risk and expense, the settlement or defense of such claim.

This Agreement is subject to revocation or modification at any time by FLP, in its sole discretion, but any such revocation or modification shall not change the status of any Attorney. In the event that any of the clauses in this Agreement shall be deemed by a court of competent jurisdiction to be invalid, said invalidation shall not invalidate or terminate the remainder of the Agreement.

Freedom Legal Plan is not an insurance product of any kind. Freedom Legal Plans is a Florida LLC but it is not regulated by the Florida Bar. This Agreement shall be interpreted and construed in accordance with the laws of the State of Florida. All disputes arising out of this Agreement that are not resolvable by good faith negotiations by the parties, shall be submitted to binding arbitration under the auspices of the American Arbitration Association (the "AAA") at its nearest location to Ft. Lauderdale, Florida and shall be settled by arbitration under the rules of the AAA then in effect. In so agreeing, the parties expressly waive their right, if any, to a trial by jury of these claims and further agree that the award of the arbitrator shall be final and binding upon them as though rendered by a court of law and enforceable in any court having jurisdiction over the same.

During the time of this Agreement, and for a period of two (2) years after, an in exchange for FLP agreeing to provide Attorney with client contacts herein, the Attorney agrees it shall not, directly or indirectly, engage in or acquire an ownership interest in any sole proprietorship, corporation, partnership, limited liability company, joint venture or any other entity which owns, operates, or manages a business which competes with FLP as conducted during the term of the Agreement. The Attorney recognizes that immediate and irresponsible damage will result to FLP if the Attorney breaches any of the terms and



conditions of this Paragraph and accordingly, the Attorney hereby consents to the entry by any court of competent jurisdiction of any injunction against Attorney to restrain any such breach, in addition to any other remedies or claims for money or damages which FLP may seek except as permitted in the Agreement.

Furthermore, Attorney agrees not to:

(a) Request any customers of any business then being conducted by FLP to curtail or cancel their business with FLP;
(b) Solicit, canvass or accept any business or transaction for any other person, firm or corporation or business similar to the business of the FLP, from any past or existing customers of the FLP;
(c) Induce or attempt to influence, any employee of FLP to terminate employment with FLP or to enter into any employment or other business relationship with any other person (including Attorney's) firm or corporation;
(d) Act or conduct its business in any manner which is contrary to the best interests of FLP.

If any paragraph or provision of this Agreement is held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity and enforceability of the other provisions hereof, all of which paragraphs and provisions and portions thereof are hereby declared severable.

This Agreement contains the entire agreement of the parties with respect to its subject matter, and no amendment, modification or waiver of any paragraphs or provisions thereto shall be valid unless undertaken in conformity with this Agreement and unless in writing and signed by all parties hereto. This Agreement may not be assigned by Attorney in whole or in part whatsoever, but may be assigned by FLP at any time at it sole discretion. This Agreement takes precedence over any other agreement, including, but not limited to any engagement letter or retainer agreement, between Attorney and Client.

FLP shall not be liable to Attorney, whether in contract or tort, including negligence or strict liability theories, for any indirect, special, incidental or consequential damages of any kind, or loss of revenue or profit, loss of business, loss of goodwill, loss of opportunity or any other financial loss arising out of this Agreement or the Attorney's representation of the Clients referred to Attorney by FLP.

FLP hereby makes no representations, implied or express warranties as a part of this Agreement AND HEREBY SPECIFICALLY DISCLAIMS ANY IMPLIED OR EXPRESS WARRANTIES FOR MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Attorney is to not to accept representation regarding any actions, proceeding, dispute or any matter against FLP, its members, affiliates, directors, officers, consultants or independent contractors regardless of who is paying for that representation.

After review of this Agreement and the Right of Service contract from FLP the undersigned attorney hereby agrees to become a participating attorney of record with Freedom Legal Plans network this day marked below.

Dated: _10/26/10_

Signature: _Gennady Litvin_

Print Name: _Gennady Litvin_

Bar/License Number: _4727228_

State of Licensure: _NY_

Firm Name: _Litvin Law Firm PC_

Street Address: _1550 Bath Ave_
_Brooklyn, NY 11228_

City, State, Zip: _____



Customer Service Number: _718-307-5684_

Fax Number: _347-713-1465_

E-mail Address: _glitvin@litvinlaw-com_

Freedom Legal Plans, LLC

Signature: _____

Printed Name: _____

Title: _____

At Freedom Legal Plans, we maintain the highest standards of service for the Client. In furtherance of our standards FLP and Network Attorney endeavor to comply with the following standards:

1. FLP will arrange for initial consultation between Attorney and Client within 48 hours, once Attorney is assigned to Client.
2. FLP will make no more than three attempts with Attorney to arrange for initial consultation with Client. After the third attempt, FLP, in its sole discretion, may refer Client to another Network Attorney.
3. Attorney must be responsive to Client communications, including phone calls and e-mails, within 48 hours.
4. FLP maintains a customer service line that can be used by Clients and Attorneys alike (1-877-427-5534).




## ATTORNEY AGREEMENT

This agreement ("Attorney Agreement") is executed on the date stated below between the undersigned attorney (hereinafter "Attorney(s)") and Freedom Legal Plans, LLC, a Delaware limited liability company (hereinafter "Freedom Legal Plans" or "FLP").

FLP is a Legal Consumer Advocacy company that ensures middle-class families have access to top legal services. FLP's clients (hereinafter "Member" or "Members") may be members of corporations, large organizations, financial institutions, national associations, labor unions or individuals, and join FLP to have access to legal services, in this case specifically related to residential foreclosure ("Legal Service"), which are provided by attorneys participating in FLP's network of attorneys ("Network Attorney(s)") at a fee rate determined by FLP's fee schedule ("Fee Schedule"), attached hereto as Exhibit A and made a part hereof.

Attorney is engaged in the provision of Legal Services and agrees to become a Network Attorney by providing such Legal Services to Members in accordance with the following terms and conditions:

## A. ATTORNEY RESPONSIBILITIES

1. Attorney agrees to provide Legal Services to Members. Attorney, in his sole discretion, shall determine the cases and the Members who Attorney agrees to represent (Members who Attorney agrees to represent may hereinafter be referred to as "Clients"). Attorney agrees that in the event that a Member is facing foreclosure and requires foreclosure defense services, and Attorney agrees to take on Member as a Client, the Legal Services shall also include the Member's spouse provided that the spouse is named as a defendant in the foreclosure action. Attorney shall not be entitled to any additional fees as a result of representing such spouse.

2. Attorney agrees to charge Clients in accordance with the Fee Schedule.

3. Attorney must also perform the following services within the definition of Legal Services, which are included as part of the standard fee under the Fee Schedule.

   a. Free initial consultation with a Member.
   b. Unlimited telephone consultations concerning the Member's defense matter.
   c. A minimum of one in-person consultation with Client. This is satisfied if free initial consultation is in-person.
   d. Full service legal representation for the Client including, but not limited to, mediations, arbitrations, depositions and trials, as necessary.
   e. Personal debt and credit analysis for Client only (excluding spouse).
   f. Preparation and review of one simple Final Will and Testament, or review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).
   g. Yearly review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).

4. Costs such as faxes, telephone, etc., may be billed separately by Attorney to a Member as long as such costs were previously described and detailed, orally and in writing, to Member.

5. FLP will use best efforts to schedule the initial consultation between Attorney and Client within 48 hours of when the Attorney is assigned to Member. FLP will make no more than three (3) attempts with Attorney to schedule an initial consultation with Member. Attorney shall use best efforts to make him/herself available for the initial consultation. After the third attempt, FLP, in its sole discretion, may refer Member to another Network Attorney. FLP maintains a customer service line that can be used by Clients and Attorneys alike (1-877-427-5534).

6. Without violating attorney/client privilege, Attorney shall advise FLP regarding the outcome of the initial Member consultation specifically regarding whether Attorney can take Member's case, whether Member has indicated he/she will hire Attorney, and whether a retainer agreement was signed between Attorney and Member. Attorney is responsible for assuring that a retainer agreement is executed by and between Attorney and Client, and such retainer shall, at a minimum, state that (i) Client is a Member of FLP; (ii) payment amounts for the Legal Services are established by FLP's rate card; and (iii) payments shall be processed directly



by a third party processing company: Legal Servicing & Billing Partners, LLC, a Delaware limited liability company.

7. Attorney shall use best efforts to reply to all Client communications as quickly as possible and must reply within forty-eight (48) hours of receipt.

8. Attorney shall maintain a minimum of $100,000/$300,000 professional liability insurance at all times during the term of this Agreement and provide FLP with proof of same as well as annual updates thereafter.

9. At all times during the term of this Agreement, Attorney shall remain in good standing with their respective state licensing department and/or State Bar Association and shall maintain an active office for the practice of law. A home office may be listed as a secondary office.

10. Attorney shall report immediately any and all changes in the Attorney's address or personal practice information to FLP so there is no lapse in participation status.

11. Attorney is not to accept representation of any clients in the case that such representation may include an action, proceeding, dispute or any matter against FLP, its members, affiliates, directors, officers, consultants or independent contractors regardless of who is paying for that representation.

12. Attorney shall provide FLP with an attorney profile, photo, letterhead and business card to be delivered to FLP upon execution of this Agreement.

13. Attorney shall execute a service contract agreement with Consumer Acquisition Network, LLC d/b/a Legal Servicing & Billing Partners, the servicing agent for FLP that will handle the payments to Attorney for services rendered to the Clients.

14. All of Attorney's rights, duties and responsibilities under this Agreement apply to Attorney's business partners, associates, support staff and other affiliated individuals or entities involved in the provision of legal services.

## B. COST TO ATTORNEY
**There is no monetary cost due from Attorney to FLP to become a Network Attorney under this Attorney Agreement.**

## C. ATTORNEY FEES
Attorney's fees, as well as other fees charged to a Client, shall be processed by Noteworld Servicing Center. The amount of fees charged to a Member who becomes Attorney's client shall be as stated listed in the Fee Schedule. Should a question arise as to the interpretation of the Fee Schedule, FLP's final determination, in its sole discretion, shall be binding.

## D. ACCEPTANCE AND REJECTION OF A CLIENT – WITHDRAWAL FROM REPRESENTATION
Attorney shall accept each Member who requests services and render prompt professional services to such Client. The Attorney may, however, reject a Member on any reasonable grounds, but shall not reject any Member seeking services by reason of the amount of fees to which he or she may be entitled to charge under the Fee Schedule. Attorney may not directly solicit or accept a Member as a client for Legal Services unless the Member is referred to Attorney by FLP. If Attorney rejects a Member, the Attorney must encourage the Member to contact FLP to seek an alternate participating Network Attorney. The Attorney may not later accept a Member after rejecting the Member, unless the Member has been subsequently referred to the Attorney by FLP after the initial rejection. The Attorney shall comply with his/her State Bar's rules of professional ethics which shall prevail in all representations of Clients. Therefore, an Attorney shall not withdraw from representation until he or she has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her Client, allowing time for Client to hire alternative counsel, delivering to Client all papers and property to which the Client is entitled, and complying with all applicable laws and rules. In all cases, Attorney is free to exercise his/her own independent professional judgment. Attorney must provide itemized billing statements to a Client upon Client request.

## E. REFERRALS AND OTHER PRACTICE
1. Attorney may not participate or contract with any pre-paid legal plan, attorney referral service or legal expense insurance program or any similar system or program for the purpose of providing Legal Services during the Term of this Agreement. Any legal service rendered to Members outside the scope of the Legal Services defined above must be charged at the hourly rates or the monthly rate established by FLP. As used in this Agreement, "attorney referral service" refers to such attorney referral services with a significant percentage of its business related to mortgages and foreclosures, but specifically excludes online legal lead generation



services. This shall continue until such time as Client is no longer an eligible Member under the plan. Attorney shall respect FLP's applicable rates (currently set at 25% off the normal or standard rates) for all current Members.

2. FLP has no part in the attorney/client relationship after Attorney accepts the Member as a Client. FLP is not privy to and does not have access to Client legal files or records once an Attorney is retained for that Client. FLP does not, either expressly or by implication, have any influence over or interfere with the professional independent judgment of Attorney. From time to time, FLP will require the Attorney to provide information regarding Attorney's area of practice, time spent in providing services, and other miscellaneous generic information for statistical research purpose for the benefit of all plan Members and Attorneys alike. Attorney is prohibited from referring a plan Member to another attorney and must refer the Member back to FLP. FLP does not share in any legal fees collected by the Attorneys in accordance with this Fee Schedule for services provided outside the scope of the list of services identified above. FLP collects a monthly membership fee from each Client using a third party collector in accordance with an agreement between the Member and the third party collector.

## F. TERM AND TERMINATION

1. The term of this Agreement shall be for a period of five (5) years from the date of execution hereof. At the end of the term, the Agreement shall automatically renew for additional five-year periods. This Agreement shall automatically terminate and Attorney shall be deemed to have withdrawn from the plan automatically upon:
   i. any suspension or termination of a license to practice law in any state, or
   ii. the Attorney no longer regularly engages in the practice of law or retires from the practice of law or becomes an inactive attorney under the State Bar rules.

2. Attorney shall immediately notify FLP if any of the above events occur.

3. This Agreement may be terminated by either party by giving the other party sixty (60) day advance written notification of such desire to terminate. In such case, the Attorney must continue to represent those Clients already engaged at the fees quoted. No new referrals shall be made to Attorney as of the date of the notice of termination. If a FLP Member contacts Attorney for services after termination, the Attorney shall refer the Member back to FLP Member Service Department for a new participating attorney assignment. Attorney shall be paid his fee no later than thirty (30) days following the effective date of termination which fee shall be prorated based on the number of days Attorney was providing Legal Services under this Agreement to Clients.

4. This Agreement may be terminated by either party for cause due to a default under this Agreement by giving the other party fifteen (15) days advance written notification identifying the default and provided such notice gives the other party ten (10) days to cure the default. If the default is not cured within the ten (10) day cure period, this Agreement shall terminate effective on the fifteenth day following the date of the termination notice. Upon termination for cause, no fees shall be owed to Attorney.

## G. INDEMNIFICATION

The undersigned Attorney agrees to indemnify and hold harmless Freedom Legal Plans, its members, directors, officers, employees, agents, representatives, consultants, administrators and clients, and defend said parties from any and all liability, loss or damages whatsoever, including without limitation any offsets or demands, that such parties may sustain as a result of actions, claims, demands, costs, including attorney's fees, due to any actions or non-actions of Attorney or misrepresentation by Attorney to any Client or third party. If a claim by a third party is made against FLP for which FLP is entitled to indemnification hereunder, FLP shall promptly notify Attorney of such claim. Attorney shall have twenty (20) days after receipt of the above-mentioned notice to undertake to conduct and control and at its sole risk and expense, the settlement or defense of such claim. Attorney shall also pay all damages and costs that are assessed against FLP by final judgment, if any.

## H. DISPUTES

This Agreement shall be interpreted and construed in accordance with the laws of the State of Florida. All disputes arising out of this Agreement that are not resolvable by good faith negotiations by the parties, shall be submitted to binding arbitration under the auspices of the American Arbitration Association (the "AAA") at its nearest location to Ft. Lauderdale, Broward County, Florida and shall be settled by arbitration under the rules of the AAA then in effect. In so agreeing, the parties expressly waive their right, if any, to a trial by jury of these claims and further agree that the award of the arbitrator



shall be final and binding upon them as though rendered by a court of law and enforceable in any court having jurisdiction over the same.

## I. NON-COMPETE AND NONSOLICITATION

1. During the Term of this Agreement, and for a period of two (2) years thereafter, and in exchange for FLP agreeing to provide Attorney with Member contacts herein, the Attorney agrees it shall not, directly or indirectly, engage in, contract with, or acquire an ownership interest in any sole proprietorship, corporation, partnership, limited liability company, joint venture or any other entity which owns, operates, or manages a business which competes with FLP's business as conducted during the Term of the Agreement. Attorney recognizes that immediate and irreparable damage will result to FLP if the Attorney breaches any of the terms and conditions of this Non-compete paragraph and accordingly, Attorney hereby consents to the entry by any court of competent jurisdiction of any injunction against Attorney to restrain any such breach, in addition to any other remedies or claims for money or damages which FLP may seek except as permitted in the Agreement.

2. Furthermore, Attorney agrees not to:
   (a) Request any customers of any business then being conducted by FLP to curtail or cancel their business with FLP;
   (b) Solicit or canvass for, or accept any business or transaction from any other person, firm or company, or business similar to the business of FLP;
   (c) Induce or attempt to influence, any employee of FLP (i) to terminate employment with FLP or (ii) to enter into any employment or other business relationship with any other person (including Attorney's) firm or corporation;
   (d) Act or conduct its business in any manner which is contrary to the best interests of FLP.

## J. MISCELLANEOUS

1. Freedom Legal Plans is not an insurance product of any kind nor a provider of legal advice, a legal service plan or lawyer referral service. Freedom Legal Plans is a Delaware limited liability authorized to conduct business in Florida but it is not regulated by the Florida Bar.

2. If any paragraph or provision of this Agreement is held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity and enforceability of the other provisions hereof, all of which paragraphs and provisions and portions thereof are hereby declared severable.

3. The failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of either party's right to assert any such claim in the future.

4. This Agreement contains the entire agreement of the parties with respect to its subject matter and all prior or contemporaneous oral or written communications, understandings or agreements between the parties are hereby superseded in their entireties.

5. No amendment, modification or waiver of any paragraphs or provisions herein shall be valid unless undertaken in conformity with this Agreement and unless in writing and signed by all parties hereto.

6. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7. Headings to the various provisions in this Agreement have been included for convenience of reference only and shall not modify, define, limit or expand the express provisions of this Agreement.

8. This Agreement may not be assigned by Attorney in whole or in part whatsoever, but may be assigned by FLP at any time at it sole discretion.



### K. LIMITATION OF LIABILITY

UNDER NO CIRCUMSTANCES WILL FLP BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, BASED ON CLAIMS OF ATTORNEY, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE OR PROFITS, LOSS OF BUSINESS, LOSS OF GOODWILL, LOSS OF OPPORTUNITY OR ANY OTHER FINANCIAL LOSS, ARISING OUT OF BREACH OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE ARISING OUT OF THIS AGREEMENT.

### L. WARRANTIES

FLP HEREBY MAKES NO REPRESENTATIONS AND NO IMPLIED OR EXPRESS WARRANTIES AS PART OF THIS AGREEMENT AND HEREBY SPECIFICALLY DISCLAIMS ANY IMPLIED OR EXPRESS WARRANTIES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

### M. TRADEMARKS, SERVICE MARKS

Attorney shall not use any name or mark of FLP in any advertising, publicity or in any other commercial manner and shall not make any media or public announcement referring to FLP without the prior written consent of FLP.

After review of this Agreement and the Service Contract the undersigned Attorney hereby agrees to become a participating attorney with Freedom Legal Plans this day marked below.

**Attorney:**

Dated: _2/2/11_

Signature: _Gennady Litvin_

Print Name: _Gennady Litvin_

Bar/License Number: _NY/4727228_

State of Licensure: _NY+FL_

Firm Name: _Litvin, Torrens & Vaiman, PA LLC_

Street Address: _11890 SW 8th St._

_Suite 214_

City, State, Zip: _Miami, FL 33184_

Customer Service Number: _877 619 9303_

Fax Number: _877 619 9302_

E-mail Address: _glitvin@litvinlaw.com_

**Freedom Legal Plans, LLC**

Signature: _____

Printed Name: _____

Title: _____

Attorney Agreement v20101209.3



## EXHIBIT A
### Fee Schedule

Total Amount Charged to Client:      $ _____ per month
Amount Charged to Client for Legal Services:      $ _____ per month



EXHIBIT

4

3/28/13 CS



## ATTORNEY AGREEMENT

This Agreement ("Agreement" or "Attorney Agreement") is executed on this 17th day of August, 2011, by and between Gennady Litvin, an individual, and Litvin Law Firm P.C., a New York professional corporation (hereinafter collectively "Attorney(s)") and Freedom Legal Plans, LLC, a Delaware limited liability company (hereinafter "Freedom Legal Plans" or "FLP").

**WHEREAS**, FLP is a Legal Consumer Advocacy company that ensures middle-class families have access to top legal services. FLP's clients (hereinafter "Member" or "Members") may be members of corporations, large organizations, financial institutions, national associations, labor unions or individuals, and join FLP to have access to legal services, in this case specifically related to residential foreclosure ("Legal Service"), which are provided by attorneys participating in FLP's network of attorneys ("Network Attorney(s)") at a fee rate determined by FLP's fee schedule ("Fee Schedule"), attached hereto as Exhibit A and made a part hereof.

**WHEREAS**, Attorney is engaged in the provision of Legal Services and agrees to become a Network Attorney by providing such Legal Services to Members in accordance with the following terms and conditions, excluding any and all previously agreed to fee schedules.

**NOW THEREFORE**, in consideration of the premises herein contained and other good and valuable consideration by each of the parties hereto unto the other, the receipt and sufficiency of which is hereby duly acknowledged, and in further consideration of the mutual covenants and conditions hereinafter set forth, the parties do hereby agree as follows:

A. Attorney and FLP acknowledge and agree that all of the terms, conditions, and responsibilities of this Agreement shall be given retroactive application and shall be deemed to have been effective on June 1, 2010.

### B. ATTORNEY RESPONSIBILITIES

1. Attorney agrees to provide Legal Services to Members. Attorney, in his sole discretion, shall determine the cases and the Members who Attorney agrees to represent (Members who Attorney agrees to represent may hereinafter be referred to as "Clients"). Attorney agrees that in the event that a Member is facing foreclosure and requires foreclosure defense services, and Attorney agrees to take on Member as a Client, the Legal Services shall also include the Member's spouse provided that the spouse is named as a defendant in the foreclosure action. Attorney shall not be entitled to any additional fees as a result of representing such spouse.

2. Attorney agrees to charge FLP in accordance with the Fee Schedule.

3. Attorney must also perform the following services within the definition of Legal Services, which are included as part of the standard fee under the Fee Schedule.

   a. Free initial consultation with a Member.
   b. Unlimited telephone consultations concerning the Member's defense matter.
   c. A minimum of one in-person consultation with Client. This is satisfied if free initial consultation is in-person.
   d. Full service legal representation for the Client including, but not limited to, mediations, arbitrations, depositions and trials, as necessary.
   e. Personal debt and credit analysis for Client only (excluding spouse).
   f. Preparation and review of one simple Final Will and Testament, or review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).
   g. Yearly review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).

4. Costs such as faxes, overnight delivery and messenger services, filing fees, transcript costs, etc., may be billed separately by Attorney to a Member as long as such costs were previously described and detailed, orally and in writing, to Member.

5. FLP will use best efforts to schedule the initial consultation between Attorney and Client within 48 hours of when the Attorney is assigned to Member. FLP will make no more than three (3) attempts with Attorney to schedule an initial consultation with Member. Attorney shall use best efforts to make him/herself available for

Page 1 of 8



the initial consultation. After the third attempt, FLP, in its sole discretion, may refer Member to another Network Attorney. FLP maintains a customer service line that can be used by Clients and Attorneys alike (1-877-427-5534). Further, Attorney agrees to inform FLP within 1 hour of initial consultation with Client whether Client has and/or will retain Attorney.

6. Without violating attorney/client privilege, Attorney shall advise FLP regarding the outcome of the initial Member consultation specifically regarding whether Attorney can take Member's case, whether Member has indicated he/she will hire Attorney, and whether a letter of representation is signed between Attorney and Member. Attorney is responsible for assuring that a letter of representations executed by and between Attorney and Client, and such retainer shall, at a minimum, state that (i) Client is a Member of FLP; (ii) payment amounts for the Legal Services are established by FLP's rate card; and (iii) payments shall be processed directly by a third party processing company: Legal Servicing & Billing Partners, LLC, a Delaware limited liability company or any comparable third party processing company that FLP should decide in its sole discretion.

7. The payments earned by Attorney, and as indicated on the Fee Schedule, shall begin thirty (30) days after the initial consultation. Attorney shall continue to receive said fees for as long as this Agreement is in good standing, Attorney is representing the client, the client is active, payment has been received by FLP from the Client, and the Client is in good standing. Any Fees paid to Attorney whereby FLP subsequently has to provide Client with a refund of any fee(s) shall be deducted from subsequent payments due and owed to Attorney by FLP.

8. Attorney shall use best efforts to reply to all Client communications as quickly as possible and must reply within twenty-four (24) hours of receipt.

9. Attorney shall maintain a minimum of $100,000/$300,000 professional liability insurance at all times during the term of this Agreement and provide FLP with proof of same as well as annual updates thereafter.

10. At all times during the term of this Agreement, Attorney shall remain in good standing with their respective state licensing agency and/or State Bar Association and shall maintain an active office for the practice of law. A home office may be listed as a secondary office.

11. Attorney shall report immediately any and all changes in the Attorney's address or personal practice information to FLP so there is no lapse in participation status.

12. Attorney is not to accept representation of any clients in the case that such representation may include an action, proceeding, dispute or any matter against FLP, its members, affiliates, directors, officers, consultants or independent contractors regardless of who is paying for that representation.

13. Attorney shall provide FLP with an attorney profile, photo, letterhead and business card to be delivered to FLP upon execution of this Agreement.

14. If necessary, Attorney shall execute a service contract agreement with Legal Servicing & Billing Partners, the servicing agent for FLP that will handle the payments to Attorney for services rendered to the Clients.

15. Attorney shall purchase any Software recommended by FLP and agrees to update said software on a regular basis.

16. Attorney shall provide to FLP, each and every month, a complete and updated breakdown of all clients being represented by Attorney and/or a Network Attorney. Such breakdown provided to FLP shall indicate, at a minimum, what lawyer is representing what particular client and shall include the Network Attorneys' full name, address, phone number, and email address.

17. No later than fourteen (14) days after execution of this Agreement, Attorney shall amend all contracts with Network Attorneys to remove all non-compete language with Network Attorney(s) and agrees that Network Attorney shall enter into direct contracts with FLP.

18. Attorney shall timely answer any and all forms, surveys, and/or questionnaires sent by FLP to Attorney, and send such completed forms, surveys, and/or questionnaires back to FLP within five (5) days of receipt thereof.

19. All of Attorney's rights, duties and responsibilities under this Agreement apply to Attorney's business partners, associates, support staff and other affiliated individuals or entities involved in the provision of legal services.

Page 2 of 8

FTL-PLP-0002260



20. Attorney understands and agrees that customer service is vital to FLP's business and as such, Attorney agrees to keep minimum hours to insure Client accessibility. Such hours of Attorney availability shall be: 9a.m.-9p.m Monday thru Friday, and 10am-5pm on Saturdays.

21. Attorney shall make contact with each and every Client no less than two (2) two times per month. Further, Attorney shall log and take notes of all conversations and meetings with Client(s) and at a minimum, such logs/notes shall record the date, time, place, and subject of the conversation.

## C. COST TO ATTORNEY
There is no monetary cost due from Attorney to FLP to become a Network Attorney under this Attorney Agreement.

## D. ATTORNEY FEES
Attorney's fees, as well as other fees charged to a Client, shall be processed bi-weekly via invoices transmitted by Attorney to FLP. The amount of fees charged to a Member who becomes Attorney's client shall be as stated listed in the Fee Schedule. Should a question arise as to the interpretation of the Fee Schedule, FLP's final determination, in its sole discretion, shall be binding.

## E. ACCEPTANCE AND REJECTION OF A CLIENT – WITHDRAWAL FROM REPRESENTATION
Attorney agrees to accept each Member who request services and render prompt professional services to such Client. The Attorney may, however, reject a Member on any reasonable grounds, but shall not reject any Member seeking services by reason of the amount of fees to which he or she may be entitled to charge under the Fee Schedule. Attorney may not directly solicit or accept a Member as a client for Legal Services unless the Member is referred to Attorney by FLP. If Attorney rejects a Member, the Attorney must encourage the Member to contact FLP to seek an alternate participating Network Attorney. The Attorney may not later accept a Member after rejecting the Member, unless the Member has been subsequently referred to the Attorney by FLP after the initial rejection. The Attorney shall comply with his/her State Bar and Court's Rules of professional Conduct which shall prevail in all representations of Clients. Therefore, an Attorney shall not withdraw from representation until he or she has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her Client, allowing time for Client to hire alternative counsel, delivering to Client all papers and property to which the Client is entitled, and complying with all applicable laws and rules. In all cases, Attorney is free to exercise his/her own independent professional judgment.

## F. REFERRALS AND OTHER PRACTICE
1. Attorney may not participate or contract with any pre-paid legal plan, any attorney referral service or legal expense insurance program or any similar system or program for the purpose of providing Legal Services during the Term of this Agreement; where such services are essentially the same as those services offered or provided to FLP Plan Members. Any legal service rendered to Members outside the scope of the Legal Services defined above must be charged at the hourly rates or the monthly rate established by FLP. As used in this Agreement, "attorney referral service" refers to any organized for-profit plan whereby legal services are provided to members of such legal plan and where those members are referred to attorneys affiliated with such plan, but specifically excludes online legal lead generation services or any other marketing or advertising strategies or devices. This shall continue until such time as Client is no longer an eligible Member under the plan. Attorney shall respect FLP's applicable rates (currently set at 25% off the normal or standard rates) for all current Members.

2. FLP has no part in the attorney/client relationship after Attorney accepts the Member as a Client. FLP is not privy to and does not have access to Client legal files or records once an Attorney is retained for that Client. FLP does not, either expressly or by implication, have any influence over or nor will FLP interfere with the professional independent judgment of Attorney. From time to time, FLP may require that Plan Attorney provide information regarding specific and general client information for evaluation, tracking, billing and statistical purposes. Further, FLP may require Plan Attorneys to provide FLP with non-privileged information on a specific Member's legal matter for the purpose of evaluating Attorney's performance, status updates, billing evaluation, efficiency, and outcome of the matter.

FTL-PLP-0002261



3.  Attorney agrees, because of the structure of this legal plan, that Attorney cannot refer a plan Member to another attorney for any reason. Plan members must be referred back to FLP in the case of termination, withdrawal or substitution of Attorney.

4.  FLP does not share in any legal fees collected by the Attorneys in accordance with this Fee Schedule for services provided. FLP collects a monthly membership fee from each Client using a third party collector in accordance with an agreement between the Member and the third party collector.

## G. TERM AND TERMINATION

1.  The term of this Agreement shall be for a period of five (5) years from the date of execution hereof. At the end of the term, the Agreement shall automatically renew for additional five-year periods. This Agreement shall automatically terminate and Attorney shall be deemed to have withdrawn from the plan automatically upon:
    i.   any suspension or termination of a license to practice law in any state, or
    ii.  the Attorney no longer regularly engages in the practice of law or retires from the practice of law or becomes an inactive attorney under the State Bar rules.

2.  Attorney shall immediately notify FLP if any of the above events occur.

3.  This Agreement may be terminated by either party by giving the other party sixty (60) day advance written notification of such desire to terminate. In such case, the Attorney must continue to represent those Clients already engaged at the fees quoted. However, attorney may withdraw in compliance with his State's applicable rules and law. No new referrals shall be made to Attorney as of the date of the notice of termination. If a FLP Member contacts Attorney for the same or related services after termination, the Attorney shall refer the Member back to FLP Member Service Department for a new participating attorney assignment. Attorney shall be paid his fee no later than thirty (30) days following the effective date of termination which fee shall be prorated based on the number of days Attorney was providing Legal Services under this Agreement to Clients.

4.  This Agreement may be terminated by either party for cause due to a default under this Agreement by giving the other party fifteen (15) days advance written notification identifying the default and provided such notice gives the other party ten (10) days to cure the default. If the default is not cured within the ten (10) day cure period, this Agreement shall terminate effective on the fifteenth day following the date of the termination notice. Upon termination for cause, no fees shall be owed to Attorney.

## H. INDEMNIFICATION

The undersigned Attorney agrees to indemnify and hold harmless Freedom Legal Plans, its members, directors, officers, employees, agents, representatives, consultants, administrators and clients, and defend said parties from any and all liability, loss or damages whatsoever, including without limitation any offsets or demands, that such parties may sustain as a result of actions, claims, demands, costs, including attorney's fees, due to any actions or non-actions of Attorney or misrepresentation by Attorney to any Client or third party. If a claim by a third party is made against FLP for which FLP is entitled to indemnification hereunder, FLP shall promptly notify Attorney of such claim. Attorney shall have twenty (20) days after receipt of the above-mentioned notice to undertake to conduct and control and at its sole risk and expense, the settlement or defense of such claim. Attorney shall also pay all damages and costs that are assessed against FLP by final judgment, if any.

## I. DISPUTES

This Agreement shall be interpreted and construed in accordance with the laws of the State of Florida. All disputes arising out of this Agreement that are not resolvable by good faith negotiations by the parties, shall be submitted to binding arbitration under the auspices of the American Arbitration Association (the "AAA") at its nearest location to Ft. Lauderdale, Broward County, Florida and shall be settled by arbitration under the rules of the AAA then in effect. In so agreeing, the parties expressly waive their right, if any, to a trial by jury of these claims and further agree that the award of the arbitrator shall be final and binding upon them as though rendered by a court of law and enforceable in any court having jurisdiction over the same. Notwithstanding, as an alternative or supplement to arbitration, FLP, at its option, may obtain in any court of competent jurisdiction any injunctive relief, including temporary restraining orders and preliminary injunctions, against conduct or threatened conduct for which no adequate remedy at law may be available or which may cause FLP irreparable harm.

FTL-PLP-0002262



## J. NON-COMPETE, NONSOLICITATION, AND TERMINATION FROM PLAN

1. During the Term of this Agreement, and for a period of two (2) years thereafter, and in exchange for FLP agreeing to provide Attorney with Member contacts herein, the Attorney agrees it shall not, directly or indirectly, engage in, contract with, or acquire an ownership interest in any sole proprietorship, corporation, partnership, limited liability company, joint venture or any other entity which owns, operates, or manages a business which competes with FLP's business as conducted during the Term of the Agreement. Attorney recognizes that immediate and irreparable damage will result to FLP if the Attorney breaches any of the terms and conditions of this Non-compete paragraph and accordingly, Attorney hereby consents to the entry by any court of competent jurisdiction of any injunction against Attorney to restrain any such breach, in addition to any other remedies or claims for money or damages which FLP may seek except as permitted in the Agreement.

2. Attorney acknowledges that clients referred to Attorney are members of the FLP. Attorney agrees that if Attorney leaves the Plan, or is terminated, substituted or barred from participating in the Plan for any reason, that Attorney will:

   a. Cease representation and withdraw from representing Plan Members pursuant to applicable ethical rules, court rules, and local professional protocols and individual judicial rules; with confirmation served upon the Plan and the Plan Member;

   b. Not solicit Plan Members to stay with or otherwise retain Attorney during or after termination, substitution or withdrawal;

   c. Continue to provide Plan Members with quality legal services through their best efforts between time of withdrawal or termination and until such time as member has chosen substitute counsel or Attorney is otherwise relieved of responsibility for the Plan Member;

   d. Consent to and not interfere with FLP maintaining a professional relationship with any affiliated lawyers or law firms or 'of counsel' of Attorney;

   e. Promptly release Plan Member's legal file to incoming attorney after substitution, termination or withdrawal of Attorney; Further, Attorney/Network Attorney understands that Client's signature will not be necessary to transfer Client's file to a new attorney upon termination of this relationship;

   f. Cooperate with substitute counsel to assure a smooth transition upon substitution;,

   g. Agree not to accept further legal work from Plan Members post- substitution, termination or withdrawal of Attorney, without written consent and authorization of FLP.

   h. Attorney hereby acknowledges that upon termination of this Agreement, with or without cause, and without demand, Attorney shall return to FLP any and all materials (including but not limited to client lists, promotional materials, manuals, pamphlets, etc.).

   i. Upon termination, Attorney agrees to provide substitute attorney with all notes and work product, for any and all files/Clients, without demand and without any Client signature being required.

   j. In the event Client shall choose to stay with Attorney/Network Attorney, and Attorney / Network Attorney continue to represent Client, Attorney/Network Attorney hereby agrees to continue to pay to FLP all fees pursuant to the Fee Agreement. Further, should Attorney/Network Attorney continue to represent Client beyond termination of this Agreement, Attorney/Network Attorney agrees to pay to FLP no less than the fees indicated on the Fee Agreement. (For example and for illustration purposes only, should Attorney receive fees from Client less than those indicated on the Fee Schedule, Attorney/Network Attorney will still be responsible for paying FLP no less than the amounts on the Fee Schedule).

3. Furthermore, Attorney agrees not to:

   (a) Request any customers of any business then being conducted by FLP to curtail or cancel their business with FLP;

   (b) Solicit or canvass for, or accept any business or transaction from any other person, firm or company, or business similar to the business of FLP;

   (c) Induce or attempt to influence, any employee of FLP (i) to terminate employment with FLP or (ii) to enter into any employment or other business relationship with any other person (including Attorney's) firm or corporation;

   (d) Act or conduct its business in any manner which is contrary to the best interests of FLP;

   (e) Solicit, contact, induce or attempt to influence, any Network Attorney.

FTL-PLP-0002263



(f) Copy, reproduce, disclose, publish or disseminate any confidential information, including but not limited to FLP's business operations and any governmental inquiries, Bar inquires, or investigations, to anyone other than its legal and financial advisors.

(g) Hire and/or employ any current or former employee or contractor of FLP during the term of this Agreement and for a period of two (2) years upon the date of termination of this Agreement.

## K. MISCELLANEOUS

1. Freedom Legal Plans is not an insurance product of any kind nor a provider of legal advice, a legal service plan or lawyer referral service. Freedom Legal Plans is a Delaware limited liability authorized to conduct business in Florida but it is not regulated by the Florida Bar.

2. If any paragraph or provision of this Agreement is held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity and enforceability of the other provisions hereof, all of which paragraphs and provisions and portions thereof are hereby declared severable.

3. The failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of either party's right to assert any such claim in the future.

4. This Agreement contains the entire agreement of the parties with respect to its subject matter and all prior or contemporaneous oral or written communications, understandings or agreements between the parties are hereby superseded in their entireties.

5. No amendment, modification or waiver of any paragraphs or provisions herein shall be valid unless undertaken in conformity with this Agreement and unless in writing and signed by all parties hereto.

6. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7. Headings to the various provisions in this Agreement have been included for convenience of reference only and shall not modify, define, limit or expand the express provisions of this Agreement.

8. This Agreement may not be assigned by Attorney in whole or in part whatsoever, but may be assigned by FLP at any time at it sole discretion.

## L. LIMITATION OF LIABILITY

UNDER NO CIRCUMSTANCES WILL FLP BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE, OR INCIDENTIAL DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, BASED ON CLAIMS OF ATTORNEY, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE OR PROFITS, LOSS OF BUSINESS, LOSS OF GOODWILL, LOSS OF OPPORTUNITY OR ANY OTHER FINANCIAL LOSS, ARISING OUT OF BREACH OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE ARISING OUT OF THIS AGREEMENT.

## M. WARRANTIES

FLP HEREBY MAKES NO REPRESENTATIONS AND NO IMPLIED OR EXPRESS WARRANTIES AS PART OF THIS AGREEMENT AND HEREBY SPECIFICALLY DISCLAIMS ANY IMPLIED OR EXPRESS WARRANTIES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## N. TRADEMARKS, SERVICE MARKS

Attorney shall not use any name or mark of FLP in any advertising, publicity or in any other commercial manner and shall not make any media or public announcement referring to FLP without the prior written consent of FLP.

FTL-PLP-0002264



After review of this Agreement and the Service Contract the undersigned Attorney hereby agrees to become a participating attorney with Freedom Legal Plans this day marked below.

**GENNADY LITVIN,**
**Individually:**

Dated: _8/17/11_

Signature: _____

Print Name: _Gennady Litvin_

Bar/License Number: _4727228_

State of Licensure: _NY_

Firm Name: _Litvin Law Firm PC_

Street Address: _1716 Coney Island Ave_

City, State, Zip: _Brooklyn NY 11230_

Customer Service Number: _877-829-4104_

Fax Number: _347-713-1465_

E-mail Address: _glitvin@litvinlaw.com_

**GENNADY LITVIN,**
**on behalf of Litvin Law Firm P.C.**

Signature: _____

Printed Name: _Gennady Litvin_

Title: _Owner_

**Freedom Legal Plans, LLC**

Signature: _____

Printed Name: _____

Title: _____

FTL-PLP-0002265



**EXHIBIT A**
Fee Schedule

| $750 Payment Breakdown | $595 Payment Breakdown |
|---|---|
| **1st payment** | **1st payment** |
| $180.00 to Attorney* | $60.00 to Attorney* |
| | |
| **2nd Payment and Beyond** | **2nd Payment and Beyond** |
| $320.00 to Attorney | $200.00 to Attorney |

*Note: The month 1 payment made to Attorney reflects the deduction of $175.00, of which such funds will be used to pay for Client's Forensic Audit.

FTL-PLP-0002266



## ATTORNEY AGREEMENT

This Agreement ("Agreement" or "Attorney Agreement") is executed on this ___ day of March, 2012, by and between Gennady Litvin, individually, and Litvin, Torrens, & Associates, LLC, a New York professional corporation, whose principal address is 1716 Coney Island Ave., Ste. 5R, Brooklyn, NY 11230 (hereinafter "Attorney") and Attorney Network, LLC, a Delaware limited liability company with a mailing address of P.O. Box 3783, Boynton Beach, FL 33424 (hereinafter "ANL").

**WHEREAS**, ANL is a Legal Consumer Advocacy company that ensures middle-class families have access to top legal services. ANL's clients (hereinafter "Member" or "Members") may be members of corporations, large organizations, financial institutions, national associations, labor unions or individuals, and join ANL to have access to legal services, in this case specifically related to residential foreclosure ("Legal Service"), which are provided by attorneys participating in ANL's network of attorneys ("Network Attorney(s)") at a fee rate determined by ANL's fee schedule ("Fee Schedule"), attached hereto as Exhibit A and made a part hereof.

**WHEREAS,** Attorney is engaged in the provision of Legal Services and agrees to become a Network Attorney by providing such Legal Services to Members in accordance with the following terms and conditions.

**NOW THEREFORE**, in consideration of the premises herein contained and other good and valuable consideration by each of the parties hereto unto the other, the receipt and sufficiency of which is hereby duly acknowledged, and in further consideration of the mutual covenants and conditions hereinafter set forth, the parties do hereby agree as follows:

A.     Attorney and ANL acknowledge and agree that the above recitals are true and correct.

B.     **ATTORNEY RESPONSIBILITIES**

1.   Attorney agrees to provide Legal Services to Members. Attorney, in his sole discretion, shall determine the cases and the Members who Attorney agrees to represent (Members who Attorney agrees to represent may hereinafter be referred to as "Clients"). Attorney agrees that in the event that a Member is facing foreclosure and requires foreclosure defense services, and Attorney agrees to take on Member as a Client, the Legal Services shall also include the Member's spouse provided that the spouse is named as a defendant in the foreclosure action. Attorney shall not be entitled to any additional fees as a result of representing such spouse.

2.   Attorney agrees to charge Clients in accordance with the Fee Schedule attached hereto as Exhibit A

3.   Attorney must also perform the following services within the definition of Legal Services, which are included as part of the standard fee under the Fee Schedule.

   a.   Free initial consultation with a Member.
   b.   Unlimited telephone consultations concerning the Member's defense matter.
   c.   A minimum of one in-person consultation with Client. This is satisfied if free initial consultation is in-person.
   d.   Full service legal representation for the Client including, but not limited to, mediations, arbitrations, depositions and trials, as necessary.
   e.   Personal debt and credit analysis for Client only (excluding spouse).
   f.   Preparation and review of one simple Final Will and Testament, or review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).
   g.   Yearly review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).

4.   Costs such as faxes, overnight delivery and messenger services, filing fees, transcript costs, etc., may be billed separately by Attorney to a Member as long as such costs were previously described and detailed, orally and in writing, to Member.

5.   ANL will use best efforts to schedule the initial consultation between Attorney and Client within 48 hours of when the Attorney is assigned to Member. ANL will make no more than three (3) attempts with Attorney to schedule an initial consultation with Member. Attorney shall use best efforts to make him/herself available for the initial consultation. After the third attempt, ANL, in its sole discretion, may refer Member to another Network Attorney. ANL maintains a customer service line that can be used by Clients and Attorneys alike (1-866-261-1009). Further, Attorney agrees to inform ANL within 1 hour of initial consultation with Client whether Client has and/or will retain Attorney.

Page 1 of 8

6. Without violating attorney/client privilege, Attorney shall advise ANL regarding the outcome of the initial Member consultation specifically regarding whether Attorney can take Member's case, whether Member has indicated he/she will hire Attorney, and whether a letter of representation is signed between Attorney and Member. Attorney is responsible for assuring that a letter of representations executed by and between Attorney and Client, and such retainer shall, at a minimum, state that (i) Client is a Member of ANL; (ii) payment amounts for the Legal Services are established by ANL's rate card; and (iii) payments shall be processed directly by a third party processing company that ANL shall designate, in ANL's sole discretion.

7. The payments earned by Attorney, and as indicated on the Fee Schedule, shall begin thirty (30) days after the initial consultation. Attorney shall continue to receive said fees for as long as this Agreement is in good standing, Attorney is representing the client, the client is active, payment has been received by ANL from the Client, and the Client is in good standing. Any Fees paid to Attorney whereby ANL subsequently has to provide Client with a refund of any fee(s) shall be deducted from subsequent payments due and owed to Attorney by ANL.

8. Attorney shall use best efforts to reply to all Client communications as quickly as possible and must reply within twenty-four (24) hours of receipt.

9. Attorney shall maintain a minimum of $100,000/$300,000 professional liability insurance at all times during the term of this Agreement and provide ANL with proof of same as well as annual updates thereafter.

10. At all times during the term of this Agreement, Attorney shall remain in good standing with their respective state licensing agency and/or State Bar Association and shall maintain an active office for the practice of law. A home office may be listed as a secondary office.

11. Attorney shall report immediately any and all changes in the Attorney's address or personal practice information to ANL so there is no lapse in participation status.

12. Attorney is not to accept representation of any clients in the case that such representation may include an action, proceeding, dispute or any matter against ANL, its members, affiliates, directors, officers, consultants or independent contractors regardless of who is paying for that representation.

13. Attorney shall provide ANL with an attorney profile, photo, letterhead and business card to be delivered to ANL upon execution of this Agreement.

14. Attorney shall execute a service contract agreement with ANL's designated payment processing company, which will handle the payments to Attorney for services rendered to the Clients.

15. Attorney shall purchase any Software recommended by ANL and agrees to update said software on a regular basis.

16. Attorney shall provide to ANL, each and every month, a complete and updated breakdown of all clients being represented by Attorney and/or a Network Attorney. Such breakdown provided to ANL shall indicate, at a minimum, what lawyer is representing what particular client and shall include the Network Attorneys' full name, address, phone number, and email address.

17. No later than fourteen (14) days after execution of this Agreement, Attorney shall amend all contracts with Network Attorneys to remove all non-compete language with Network Attorney(s) and agrees that Network Attorney shall enter into direct contracts with ANL.

18. Attorney shall timely answer any and all forms, surveys, and/or questionnaires sent by ANL to Attorney, and send such completed forms, surveys, and/or questionnaires back to ANL within five (5) days of receipt thereof.

19. All of Attorney's rights, duties and responsibilities under this Agreement apply to Attorney's business partners, associates, support staff and other affiliated individuals or entities involved in the provision of legal services.

20. Attorney understands and agrees that customer service is vital to ANL's business and as such, Attorney agrees to keep minimum hours to insure Client accessibility. Such hours of Attorney availability shall be: 9.a.m.-9p.m Monday thru Friday, and 10am-5pm on Saturdays.

21. Attorney shall make contact with each and every Client no less than two (2) two times per month. Further, Attorney shall log and take notes of all conversations and meetings with Client(s) and at a minimum, such logs/notes shall record the date, time, place, and subject of the conversation.

FTL-PLP-0008666

## C. COST TO ATTORNEY
There is no monetary cost due from Attorney to ANL to become a Network Attorney under this Attorney Agreement.

## D. ATTORNEY FEES
Attorney's fees, as well as other fees charged to a Client, shall be processed bi-weekly via invoices transmitted by Attorney to ANL. The amount of fees charged to a Member who becomes Attorney's client shall be as stated listed in the Fee Schedule. Should a question arise as to the interpretation of the Fee Schedule, ANL's final determination, in its sole discretion, shall be binding.

## E. ACCEPTANCE AND REJECTION OF A CLIENT – WITHDRAWAL FROM REPRESENTATION
Attorney agrees to accept each Member who request services and render prompt professional services to such Client. The Attorney may, however, reject a Member on any reasonable grounds, but shall not reject any Member seeking services by reason of the amount of fees to which he or she may be entitled to charge under the Fee Schedule. Attorney may not directly solicit or accept a Member as a client for Legal Services unless the Member is referred to Attorney by ANL. If Attorney rejects a Member, the Attorney must encourage the Member to contact ANL to seek an alternate participating Network Attorney. The Attorney may not later accept a Member after rejecting the Member, unless the Member has been subsequently referred to the Attorney by ANL after the initial rejection. The Attorney shall comply with his/her State Bar and Court's Rules of professional Conduct which shall prevail in all representations of Clients. Therefore, an Attorney shall not withdraw from representation until he or she has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her Client, allowing time for Client to hire alternative counsel, delivering to Client all papers and property to which the Client is entitled, and complying with all applicable laws and rules. In all cases, Attorney is free to exercise his/her own independent professional judgment.

## F. REFERRALS AND OTHER PRACTICE
1. Attorney may not participate or contract with any pre-paid legal plan, any attorney referral service or legal expense insurance program or any similar system or program for the purpose of providing Legal Services during the Term of this Agreement; where such services are essentially the same as those services offered or provided to ANL Plan Members. Any legal service rendered to Members outside the scope of the Legal Services defined above must be charged at the hourly rates or the monthly rate established by ANL. As used in this Agreement, "attorney referral service" refers to any organized for-profit plan whereby legal services are provided to members of such legal plan and where those members are referred to attorneys affiliated with such plan, but specifically excludes online legal lead generation services or any other marketing or advertising strategems or devices. This shall continue until such time as Client is no longer an eligible Member under the plan. Attorney shall respect ANL's applicable rates (currently set at 25% off the normal or standard rates) for all current Members.

2. ANL has no part in the attorney/client relationship after Attorney accepts the Member as a Client. ANL is not privy to and does not have access to Client legal files or records once an Attorney is retained for that Client. ANL does not, either expressly or by implication, have any influence over or nor will ANL interfere with the professional independent judgment of Attorney. Notwithstanding any language to the contrary, ANL, at ANL's sole discretion, reserves the right to request Client execute a Power of Attorney authorizing and granting ANL power of attorney. When such Power of Attorney is executed by Client, Attorney agrees to recognize said Power of Attorney and provide any requested information by ANL, in regards to said Client in which ANL has been granted a valid Power of Attorney, without demand.

3. Attorney agrees, because of the structure of this legal plan, that Attorney cannot refer a plan Member to another attorney for any reason. Plan members must be referred back to ANL in the case of termination, withdrawal or substitution of Attorney.

4. ANL does not share in any legal fees collected by the Attorneys in accordance with this Fee Schedule for services provided. ANL collects a monthly membership fee from each Client using a third party collector in accordance with an agreement between the Member and the third party collector.

FTL-PLP-0008667

## G. TERM AND TERMINATION

1. The term of this Agreement shall be for a period of five (5) years from the date of execution hereof. At the end of the term, the Agreement shall automatically renew for additional five-year periods. This Agreement shall automatically terminate and Attorney shall be deemed to have withdrawn from the plan automatically upon:
   i. any suspension or termination of a license to practice law in any state, or
   ii. the Attorney no longer regularly engages in the practice of law or retires from the practice of law or becomes an inactive attorney under the State Bar rules.

2. Attorney shall immediately notify ANL if any of the above events occur.

3. This Agreement may be terminated by either party by giving the other party sixty (60) day advance written notification of such desire to terminate. In such case, the Attorney must continue to represent those Clients already engaged at the fees quoted. However, attorney may withdraw in compliance with his State's applicable rules and law. No new referrals shall be made to Attorney as of the date of the notice of termination. If a ANL Member contacts Attorney for the same or related services after termination, the Attorney shall refer the Member back to ANL Member Service Department for a new participating attorney assignment. Attorney shall be paid his fee no later than thirty (30 days) following the effective date of termination which fee shall be prorated based on the number of days Attorney was providing Legal Services under this Agreement to Clients.

4. This Agreement may be terminated by either party for cause due to a default under this Agreement by giving the other party fifteen (15) days advance written notification identifying the default and provided such notice gives the other party ten (10) days to cure the default. If the default is not cured within the ten (10) day cure period, this Agreement shall terminate effective on the fifteenth day following the date of the termination notice. Upon termination for cause, no fees shall be owed to Attorney.

## H. INDEMNIFICATION

The undersigned Attorney agrees to indemnify and hold harmless ANL, its members, directors, officers, employees, agents, representatives, consultants, administrators and clients, and defend said parties from any and all liability, loss or damages whatsoever, including without limitation any offsets or demands, that such parties may sustain as a result of actions, claims, demands, costs, including attorney's fees, due to any actions or non-actions of Attorney or misrepresentation by Attorney to any Client or third party. If a claim by a third party is made against ANL for which ANL is entitled to indemnification hereunder, ANL shall promptly notify Attorney of such claim. Attorney shall have twenty (20) days after receipt of the above-mentioned notice to undertake to conduct and control and at its sole risk and expense, the settlement or defense of such claim. Attorney shall also pay all damages and costs that are assessed against ANL by final judgment, if any.

## I. DISPUTES

This Agreement shall be interpreted and construed in accordance with the laws of the State of Florida. All disputes arising out of this Agreement that are not resolvable by good faith negotiations by the parties, shall be submitted to binding arbitration under the auspices of the American Arbitration Association (the "AAA") at its nearest location to Ft. Lauderdale, Broward County, Florida and shall be settled by arbitration under the rules of the AAA then in effect. In so agreeing, the parties expressly waive their right, if any, to a trial by jury of these claims and further agree that the award of the arbitrator shall be final and binding upon them as though rendered by a court of law and enforceable in any court having jurisdiction over the same. Notwithstanding, as an alternative or supplement to arbitration, ANL, at its option, may obtain in any court of competent jurisdiction any injunctive relief, including temporary restraining orders and preliminary injunctions, against conduct or threatened conduct for which no adequate remedy at law may be available or which may cause ANL irreparable harm.

## J. NON-COMPETE, NONSOLICITATION, AND TERMINATION FROM PLAN

1. During the Term of this Agreement, and for a period of two (2) years thereafter, and in exchange for ANL agreeing to provide Attorney with Member contacts herein, the Attorney agrees it shall not, directly or indirectly, engage in, contract with, or acquire an ownership interest in any sole proprietorship, corporation, partnership, limited liability company, joint venture or any other entity which owns, operates, or manages a business which competes with ANL's business as conducted during the Term of the Agreement. Attorney recognizes that immediate and irreparable damage will result to ANL if the Attorney breaches any of the terms and conditions of this Non-compete paragraph and accordingly, Attorney hereby consents to the entry by any court of competent jurisdiction of any injunction against Attorney to restrain any such breach, in addition to any other remedies or claims for money or damages which ANL may seek except as permitted in the Agreement.

FTL-PLP-0008668

2    Attorney acknowledges that clients referred to Attorney are members of the ANL. Attorney agrees that if Attorney leaves the Plan, or is terminated, substituted or barred from participating in the Plan for any reason, that Attorney will:

a    Cease representation and withdraw from representing Plan Members pursuant to applicable ethical rules, court rules, and local professional protocols and individual judicial rules; with confirmation served upon the Plan and the Plan Member;

b    Not solicit Plan Members to stay with or otherwise retain Attorney during or after termination, substitution or withdrawal;

c    Continue to provide Plan Members with quality legal services through their best efforts between time of withdrawal or termination and until such time as member has chosen substitute counsel or Attorney is otherwise relieved of responsibility for the Plan Member;

d    Consent to and not interfere with ANL maintaining a professional relationship with any affiliated lawyers law firms or 'of counsel' of Attorney;

e    Promptly release Plan Member's legal file to incoming attorney after substitution, termination or withdrawal of Attorney; Further, Attorney/Network Attorney understands that Client's signature will not be necessary to transfer Client's file to a new attorney upon termination of this relationship;

f    Cooperate with substitute counsel to assure a smooth transition upon substitution;

g    Agree not to accept further legal work from Plan Members post- substitution, termination or withdrawal of Attorney, without written consent and authorization of ANL.

h.    Attorney hereby acknowledges that upon termination of this Agreement, with or without cause, and without demand, Attorney shall return to ANL any and all materials (including but not limited to client lists, promotional materials, manuals, pamphlets, etc.).

i.    Upon termination, Attorney agrees to provide substitute attorney with all notes and work product, for any and all files/Clients, without demand and without any Client signature being required.

j.    In the event Client shall choose to stay with Attorney/Network Attorney, and Attorney / Network Attorney continue to represent Client, Attorney/Network Attorney hereby agrees to continue to pay to ANL all fees pursuant to the Fee Agreement. Further, should Attorney/Network Attorney continue to represent Client beyond termination of this Agreement, Attorney/Network Attorney agrees to pay to ANL no less than the fees indicated on the Fee Agreement. (For example and for illustration purposes only, should Attorney receive fees from Client less than those indicated on the Fee Schedule, Attorney/Network Attorney will still be responsible for paying ANL no less than the amounts on the Fee Schedule).

3    Furthermore, Attorney agrees not to:

(a) Request any customers of any business then being conducted by ANL to curtail or cancel their business with ANL;

(b) Solicit or canvass for, or accept any business or transaction from any other person, firm or company, or business similar to the business of ANL;

(c) Induce or attempt to influence, any employee of ANL (i) to terminate employment with ANL or (ii) to enter into any employment or other business relationship with any other person (including Attorney's) firm or corporation;

(d) Act or conduct its business in any manner which is contrary to the best interests of ANL;

(e) Solicit, contact, induce or attempt to influence, any Network Attorney.

(f) Copy, reproduce, disclose, publish or disseminate any confidential information, including but not limited to ANL's business operations and any governmental inquiries, Bar inquires, or investigations, to anyone other than its legal and financial advisors.

(g) Hire and/or employ any current or former employee or contractor of ANL during the term of this Agreement and for a period of two (2) years upon the date of termination of this Agreement.

(h) Disparage ANL or ANL's business or products, and may not encourage any third parties to sue PL.

## K. MISCELLANEOUS

1.   ANL is not an insurance product of any kind nor a provider of legal advice, a legal service plan or lawyer referral service. ANL is a Delaware limited liability authorized to conduct business in Florida but it is not regulated by the Florida Bar.

FTL-PLP-0008669

2. If any paragraph or provision of this Agreement is held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity and enforceability of the other provisions hereof, all of which paragraphs and provisions and portions thereof are hereby declared severable.

3. The failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of either party's right to assert any such claim in the future.

4. This Agreement contains the entire agreement of the parties with respect to its subject matter and all prior or contemporaneous oral or written communications, understandings or agreements between the parties are hereby superseded in their entireties. This Agreement shall supercede and replace any prior agreements between the Parties.

5. No amendment, modification or waiver of any paragraphs or provisions herein shall be valid unless undertaken in conformity with this Agreement and unless in writing and signed by all parties hereto.

6. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7. Headings to the various provisions in this Agreement have been included for convenience of reference only and shall not modify, define, limit or expand the express provisions of this Agreement.

8. This Agreement may not be assigned by Attorney in whole or in part whatsoever, but may be assigned by ANL at any time at it sole discretion.

## L. LIMITATION OF LIABILITY
UNDER NO CIRCUMSTANCES WILL ANL BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE, OR INCIDENTIAL DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, BASED ON CLAIMS OF ATTORNEY, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE OR PROFITS, LOSS OF BUSINESS, LOSS OF GOODWILL, LOSS OF OPPORTUNITY OR ANY OTHER FINANCIAL LOSS, ARISING OUT OF BREACH OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE ARISING OUT OF THIS AGREEMENT.

## M. WARRANTIES
ANL HEREBY MAKES NO REPRESENTATIONS AND NO IMPLIED OR EXPRESS WARRANTIES AS PART OF THIS AGREEMENT AND HEREBY SPECIFICALLY DISCLAIMS ANY IMPLIED OR EXPRESS WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## N. TRADEMARKS, SERVICE MARKS
Attorney shall not use any name or mark of ANL in any advertising, publicity or in any other commercial manner and shall not make any media or public announcement referring to ANL without the prior written consent of ANL.

After review of this Agreement and the Service Contract the undersigned Attorney hereby agrees to become a participating attorney with ANL this day marked below.

**GENNADY LITVIN,**
**Individually:**

Dated: 8/15/12

Signature:

Print Name: Gennady Litvin

Bar/License Number: 4727228

State of Licensure: NY

FTL-PLP-0008670

Firm Name: _Litvin, Torrens & Assoc._

Street Address: _11890 SW 8th St. #24_

City, State, Zip: _Miami FL 33184_

Customer Service Number: _877-619-9303_

Fax Number: _____

E-mail Address: _glitvin@litvinlaw.com_

**GENNADY LITVIN,**
**on behalf of Litvin, Torrens, and Associates LLC**

Signature: _____

Printed Name: _Gennady Litvin_

Title: _Partner_

FTL-PLP-0008671

## EXHIBIT A
### Fee Schedule

| Program | Consultation | Payment Date | 1st Payment Amount | Subsequent Payment Amount |
|---|---|---|---|---|
| MAP, TAP ND (750) (PLP) | Month 3 | Month 4 | $75.00 | $250.00 |
| FD, TAP Default (750) (PLP) | Month 1 | Month 2 | $75.00 | $250.00 |
| SD, TSD (750) (1st pay 3 payments up front) (PLP) | Month 1 | Month 1 | $75.00 + $250.00 | $250.00 |
| MAP, TAP ND (595) (PLP) | Month 3 | Month 4 | $75.00 | $250.00 |
| FD, TAP Default (595) (PLP) | Month 1 | Month 2 | $75.00 | $250.00 |
| SD, TSD (595) (1st pay 3 payments up front) (PLP) | Month 1 | Month 1 | $75.00 + $250.00 | $250.00 |

*Note: The month 1 payment made to Attorney reflects the deduction of $175.00, of which such funds will be used to pay for the Attorney's access fee.

FTL-PLP-0008672


## ATTORNEY AGREEMENT

This Agreement ("Agreement" or "Attorney Agreement") is executed on this 5th day of March 2012, by and between Gennady Litvin, individually, and Litvin Law Firm, P.C., a New York professional corporation, whose principal address is 1716 Coney Island Ave., Ste. 5R, Brooklyn, NY 11230 (hereinafter "Attorney") and Attorney Network, LLC, a Delaware limited liability company with a mailing address of P.O. Box 3783, Boynton Beach, FL 33424 (hereinafter "ANL").

**WHEREAS**, ANL is a Legal Consumer Advocacy company that ensures middle-class families have access to top legal services. ANL's clients (hereinafter "Member" or "Members") may be members of corporations, large organizations, financial institutions, national associations, labor unions or individuals, and join ANL to have access to legal services, in this case specifically related to residential foreclosure ("Legal Service"), which are provided by attorneys participating in ANL's network of attorneys ("Network Attorney(s)") at a fee rate determined by ANL's fee schedule ("Fee Schedule"), attached hereto as Exhibit A and made a part hereof.

**WHEREAS**, Attorney is engaged in the provision of Legal Services and agrees to become a Network Attorney by providing such Legal Services to Members in accordance with the following terms and conditions.

**NOW THEREFORE**, in consideration of the premises herein contained and other good and valuable consideration by each of the parties hereto unto the other, the receipt and sufficiency of which is hereby duly acknowledged, and in further consideration of the mutual covenants and conditions hereinafter set forth, the parties do hereby agree as follows:

A.    Attorney and ANL acknowledge and agree that the above recitals are true and correct.

B.    **ATTORNEY RESPONSIBILITIES**

1.    Attorney agrees to provide Legal Services to Members. Attorney, in his sole discretion, shall determine the cases and the Members who Attorney agrees to represent (Members who Attorney agrees to represent may hereinafter be referred to as "Clients"). Attorney agrees that in the event that a Member is facing foreclosure and requires foreclosure defense services, and Attorney agrees to take on Member as a Client, the Legal Services shall also include the Member's spouse provided that the spouse is named as a defendant in the foreclosure action. Attorney shall not be entitled to any additional fees as a result of representing such spouse. *ANL* *GL*

2.    Attorney agrees to charge Clients in accordance with the Fee Schedule attached hereto as Exhibit A

3.    Attorney must also perform the following services within the definition of Legal Services, which are included as part of the standard fee under the Fee Schedule.

   a.    Free initial consultation with a Member.
   b.    Unlimited telephone consultations concerning the Member's defense matter.
   c.    A minimum of one in-person consultation with Client. This is satisfied if free initial consultation is in-person.
   d.    Full service legal representation for the Client including, but not limited to, mediations, arbitrations, depositions and trials, as necessary.
   e.    Personal debt and credit analysis for Client only (excluding spouse).
   f.    Preparation and review of one simple Final Will and Testament, or review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).
   g.    Yearly review of existing Final Will and Testament (not to exceed 6 pages). This is applicable only to Client (excluding spouse).

4.    Costs such as faxes, overnight delivery and messenger services, filing fees, transcript costs, etc., may be billed separately by Attorney to a Member as long as such costs were previously described and detailed, orally and in writing, to Member.

5.    ANL will use best efforts to schedule the initial consultation between Attorney and Client within 48 hours of when the Attorney is assigned to Member. ANL will make no more than three (3) attempts with Attorney to schedule an initial consultation with Member. Attorney shall use best efforts to make him/herself available for the initial consultation. After the third attempt, ANL, in its sole discretion, may refer Member to another Network Attorney. ANL maintains a customer service line that can be used by Clients and Attorneys alike (1-866-261-1009). Further, Attorney agrees to inform ANL within 1 hour of initial consultation with Client whether Client has and/or will retain Attorney.

Page 1 of 8

6. Without violating attorney/client privilege, Attorney shall advise ANL regarding the outcome of the initial Member consultation specifically regarding whether Attorney can take Member's case, whether Member has indicated he/she will hire Attorney, and whether a letter of representation is signed between Attorney and Member. Attorney is responsible for assuring that a letter of representations executed by and between Attorney and Client, and such retainer shall, at a minimum, state that (i) Client is a Member of ANL; (ii) payment amounts for the Legal Services are established by ANL's rate card; and (iii) payments shall be processed directly by a third party processing company that ANL shall designate, in ANL's sole discretion.

7. The payments earned by Attorney, and as indicated on the Fee Schedule, shall begin thirty (30) days after the initial consultation. Attorney shall continue to receive said fees for as long as this Agreement is in good standing. Attorney is representing the client, the client is active, payment has been received by ANL from the Client, and the Client is in good standing. Any Fees paid to Attorney whereby ANL subsequently has to provide Client with a refund of any fee(s) shall be deducted from subsequent payments due and owed to Attorney by ANL.

8. Attorney shall use best efforts to reply to all Client communications as quickly as possible and must reply within twenty-four (24) hours of receipt.

9. Attorney shall maintain a minimum of $100,000/$300,000 professional liability insurance at all times during the term of this Agreement and provide ANL with proof of same as well as annual updates thereafter.

10. At all times during the term of this Agreement, Attorney shall remain in good standing with their respective state licensing agency and/or State Bar Association and shall maintain an active office for the practice of law. A home office may be listed as a secondary office.

11. Attorney shall report immediately any and all changes in the Attorney's address or personal practice information to ANL so there is no lapse in participation status.

12. Attorney is not to accept representation of any clients in the case that such representation may include an action, proceeding, dispute or any matter against ANL, its members, affiliates, directors, officers, consultants or independent contractors regardless of who is paying for that representation.

13. Attorney shall provide ANL with an attorney profile, photo, letterhead and business card to be delivered to ANL upon execution of this Agreement.

14. Attorney shall execute a service contract agreement with ANL's designated payment processing company, which will handle the payments to Attorney for services rendered to the Clients. *6L*

15. Attorney shall purchase any Software recommended by ANL and agrees to update said software on a regular basis.

16. Attorney shall provide to ANL, each and every month, a complete and updated breakdown of all clients being represented by Attorney and/or a Network Attorney. Such breakdown provided to ANL shall indicate, at a minimum, what lawyer is representing what particular client and shall include the Network Attorneys' full name, address, phone number, and email address.

17. No later than fourteen (14) days after execution of this Agreement, Attorney shall amend all contracts with Network Attorneys to remove all non-compete language with Network Attorney(s) and agrees that Network Attorney shall enter into direct contracts with ANL.

18. Attorney shall timely answer any and all forms, surveys, and/or questionnaires sent by ANL to Attorney, and send such completed forms, surveys, and/or questionnaires back to ANL within five (5) days of receipt thereof.

19. All of Attorney's rights, duties and responsibilities under this Agreement apply to Attorney's business partners, associates, support staff and other affiliated individuals or entities involved in the provision of legal services.

20. Attorney understands and agrees that customer service is vital to ANL's business and as such, Attorney agrees to keep minimum hours to insure Client accessibility. Such hours of Attorney availability shall be: 9a.m.-9p.m Monday thru Friday, and 10am-5pm on Saturdays.

21. Attorney shall make contact with each and every Client no less than two (2) two times per month. Further, Attorney shall log and take notes of all conversations and meetings with Client(s) and at a minimum, such logs/notes shall record the date, time, place, and subject of the conversation.

FTL-PLP-0008205

## C. COST TO ATTORNEY
There is no monetary cost due from Attorney to ANL to become a Network Attorney under this Attorney Agreement.

## D. ATTORNEY FEES
Attorney's fees, as well as other fees charged to a Client, shall be processed bi-weekly via invoices transmitted by Attorney to ANL. The amount of fees charged to a Member who becomes Attorney's client shall be as stated listed in the Fee Schedule. Should a question arise as to the interpretation of the Fee Schedule, ANL's final determination, in its sole discretion, shall be binding.

## E. ACCEPTANCE AND REJECTION OF A CLIENT – WITHDRAWAL FROM REPRESENTATION
Attorney agrees to accept each Member who request services and render prompt professional services to such Client. The Attorney may, however, reject a Member on any reasonable grounds, but shall not reject any Member seeking services by reason of the amount of fees to which he or she may be entitled to charge under the Fee Schedule. Attorney may not directly solicit or accept a Member as a client for Legal Services unless the Member is referred to Attorney by ANL. If Attorney rejects a Member, the Attorney must encourage the Member to contact ANL to seek an alternate participating Network Attorney. The Attorney may not later accept a Member after rejecting the Member, unless the Member has been subsequently referred to the Attorney by ANL after the initial rejection. The Attorney shall comply with his/her State Bar and Court's Rules of professional Conduct which shall prevail in all representations of Clients. Therefore, an Attorney shall not withdraw from representation until he or she has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her Client, allowing time for Client to hire alternative counsel, delivering to Client all papers and property to which the Client is entitled, and complying with all applicable laws and rules. In all cases, Attorney is free to exercise his/her own independent professional judgment.

## F. REFERRALS AND OTHER PRACTICE
1. Attorney may not participate or contract with any pre-paid legal plan, any attorney referral service or legal expense insurance program or any similar system or program for the purpose of providing Legal Services during the Term of this Agreement; where such services are essentially the same as those services offered or provided to ANL Plan Members. Any legal service rendered to Members outside the scope of the Legal Services defined above must be charged at the hourly rates or the monthly rate established by ANL. As used in this Agreement, "attorney referral service" refers to any organized for-profit plan whereby legal services are provided to members of such legal plan and where those members are referred to attorneys affiliated with such plan, but specifically excludes online legal lead generation services or any other marketing or advertising strategems or devices. This shall continue until such time as Client is no longer an eligible Member under the plan. Attorney shall respect ANL's applicable rates (currently set at 25% off the normal or standard rates) for all current Members.

2. ANL has no part in the attorney/client relationship after Attorney accepts the Member as a Client. ANL is not privy to and does not have access to Client legal files or records once an Attorney is retained for that Client. ANL does not, either expressly or by implication, have any influence over or nor will ANL interfere with the professional independent judgment of Attorney. Notwithstanding any language to the contrary, ANL, at ANL's sole discretion, reserves the right to request Client execute a Power of Attorney authorizing and granting ANL power of attorney. When such Power of Attorney is executed by Client, Attorney agrees to recognize said Power of Attorney and provide any requested information by ANL, in regards to said Client in which ANL has been granted a valid Power of Attorney, without demand.

3. Attorney agrees, because of the structure of this legal plan, that Attorney cannot refer a plan Member to another attorney for any reason. Plan members must be referred back to ANL in the case of termination, withdrawal or substitution of Attorney.

4. ANL does not share in any legal fees collected by the Attorneys in accordance with this Fee Schedule for services provided. ANL collects a monthly membership fee from each Client using a third party collector in accordance with an agreement between the Member and the third party collector.

FTL-PLP-0008206

### G. TERM AND TERMINATION

1. The term of this Agreement shall be for a period of five (5) years from the date of execution hereof. At the end of the term, the Agreement shall automatically renew for additional five-year periods. This Agreement shall automatically terminate and Attorney shall be deemed to have withdrawn from the plan automatically upon:
   i. any suspension or termination of a license to practice law in any state, or
   ii. the Attorney no longer regularly engages in the practice of law or retires from the practice of law or becomes an inactive attorney under the State Bar rules.

2. Attorney shall immediately notify ANL if any of the above events occur.

3. This Agreement may be terminated by either party by giving the other party sixty (60) day advance written notification of such desire to terminate. In such case, the Attorney must continue to represent those Clients already engaged at the fees quoted. However, attorney may withdraw in compliance with his State's applicable rules and law. No new referrals shall be made to Attorney as of the date of the notice of termination. If a ANL Member contacts Attorney for the same or related services after termination, the Attorney shall refer the Member back to ANL Member Service Department for a new participating attorney assignment. Attorney shall be paid his fee no later than thirty (30 days) following the effective date of termination which fee shall be prorated based on the number of days Attorney was providing Legal Services under this Agreement to Clients.

4. This Agreement may be terminated by either party for cause due to a default under this Agreement by giving the other party fifteen (15) days advance written notification identifying the default and provided such notice gives the other party ten (10) days to cure the default. If the default is not cured within the ten (10) day cure period, this Agreement shall terminate effective on the fifteenth day following the date of the termination notice. Upon termination for cause, no fees shall be owed to Attorney.

### H. INDEMNIFICATION

The undersigned Attorney agrees to indemnify and hold harmless ANL, its members, directors, officers, employees, agents, representatives, consultants, administrators and clients, and defend said parties from any and all liability, loss or damages whatsoever, including without limitation any offsets or demands, that such parties may sustain as a result of actions, claims, demands, costs, including attorney's fees, due to any actions or non-actions of Attorney or misrepresentation by Attorney to any Client or third party. If a claim by a third party is made against ANL for which ANL is entitled to indemnification hereunder, ANL shall promptly notify Attorney of such claim. Attorney shall have twenty (20) days after receipt of the above-mentioned notice to undertake to conduct and control and at its sole risk and expense, the settlement or defense of such claim. Attorney shall also pay all damages and costs that are assessed against ANL by final judgment, if any.

### I. DISPUTES

This Agreement shall be interpreted and construed in accordance with the laws of the State of Florida. All disputes arising out of this Agreement that are not resolvable by good faith negotiations by the parties, shall be submitted to binding arbitration under the auspices of the American Arbitration Association (the "AAA") at its nearest location to Ft. Lauderdale, Broward County, Florida and shall be settled by arbitration under the rules of the AAA then in effect. In so agreeing, the parties expressly waive their right, if any, to a trial by jury of these claims and further agree that the award of the arbitrator shall be final and binding upon them as though rendered by a court of law and enforceable in any court having jurisdiction over the same. Notwithstanding, as an alternative or supplement to arbitration, ANL, at its option, may obtain in any court of competent jurisdiction any injunctive relief, including temporary restraining orders and preliminary injunctions, against conduct or threatened conduct for which no adequate remedy at law may be available or which may cause ANL irreparable harm.

### J. NON-COMPETE, NONSOLICITATION, AND TERMINATION FROM PLAN

1. During the Term of this Agreement, and for a period of two (2) years thereafter, and in exchange for ANL agreeing to provide Attorney with Member contacts herein, the Attorney agrees it shall not, directly or indirectly, engage in, contract with, or acquire an ownership interest in any sole proprietorship, corporation, partnership, limited liability company, joint venture or any other entity which owns, operates, or manages a business which competes with ANL's business as conducted during the Term of the Agreement. Attorney recognizes that immediate and irreparable damage will result to ANL if the Attorney breaches any of the terms and conditions of this Non-compete paragraph and accordingly, Attorney hereby consents to the entry by any court of competent jurisdiction of any injunction against Attorney to restrain any such breach, in addition to any other remedies or claims for money or damages which ANL may seek except as permitted in the Agreement.

FTL-PLP-0008207

2   Attorney acknowledges that clients referred to Attorney are members of the ANL. Attorney agrees that if Attorney leaves the Plan, or is terminated, substituted or barred from participating in the Plan for any reason, that Attorney will:

a   Cease representation and withdraw from representing Plan Members pursuant to applicable ethical rules, court rules, and local professional protocols and individual judicial rules; with confirmation served upon the Plan and the Plan Member;

b   Not solicit Plan Members to stay with or otherwise retain Attorney during or after termination, substitution or withdrawal;

c   Continue to provide Plan Members with quality legal services through their best efforts between time of withdrawal or termination and until such time as member has chosen substitute counsel or Attorney is otherwise relieved of responsibility for the Plan Member;

d   Consent to and not interfere with ANL maintaining a professional relationship with any affiliated lawyers law firms or 'of counsel' of Attorney;

e   Promptly release Plan Member's legal file to incoming attorney after substitution, termination or withdrawal of Attorney; Further, Attorney/Network Attorney understands that Client's signature will not be necessary to transfer Client's file to a new attorney upon termination of this relationship;

f   Cooperate with substitute counsel to assure a smooth transition upon substitution;,

g   Agree not to accept further legal work from Plan Members post- substitution, termination or withdrawal of Attorney, without written consent and authorization of ANL.

h.  Attorney hereby acknowledges that upon termination of this Agreement, with or without cause, and without demand, Attorney shall return to ANL any and all materials (including but not limited to client lists, promotional materials, manuals, pamphlets, etc.).

i.  Upon termination, Attorney agrees to provide substitute attorney with all notes and work product, for any and all files/Clients, without demand and without any Client signature being required.

j.  In the event Client shall choose to stay with Attorney/Network Attorney, and Attorney / Network Attorney continue to represent Client, Attorney/Network Attorney hereby agrees to continue to pay to ANL all fees pursuant to the Fee Agreement. Further, should Attorney/Network Attorney continue to represent Client beyond termination of this Agreement, Attorney/Network Attorney agrees to pay to ANL no less than the fees indicated on the Fee Agreement. (For example and for illustration purposes only, should Attorney receive fees from Client less than those indicated on the Fee Schedule, Attorney/Network Attorney will still be responsible for paying ANL no less than the amounts on the Fee Schedule).

3   Furthermore, Attorney agrees not to:

(a) Request any customers of any business then being conducted by ANL to curtail or cancel their business with ANL;

(b) Solicit or canvass for, or accept any business or transaction from any other person, firm or company, or business similar to the business of ANL;

(c) Induce or attempt to influence, any employee of ANL (i) to terminate employment with ANL or (ii) to enter into any employment or other business relationship with any other person (including Attorney's) firm or corporation;

(d) Act or conduct its business in any manner which is contrary to the best interests of ANL;

(e) Solicit, contact, induce or attempt to influence, any Network Attorney.

(f) Copy, reproduce, disclose, publish or disseminate any confidential information, including but not limited to ANL's business operations and any governmental inquiries, Bar inquires, or investigations, to anyone other than its legal and financial advisors.

(g) Hire and/or employ any current or former employee or contractor of ANL during the term of this Agreement and for a period of two (2) years upon the date of termination of this Agreement.

(h) Disparage ANL or ANL's business or products, and may not encourage any third parties to sue PL.

## K.  MISCELLANEOUS

1.  ANL is not an insurance product of any kind nor a provider of legal advice, a legal service plan or lawyer referral service. ANL is a Delaware limited liability authorized to conduct business in Florida but it is not regulated by the Florida Bar.

FTL-PLP-0008208

2.  If any paragraph or provision of this Agreement is held invalid or unenforceable, such invalidity or unenforceability shall not affect the validity and enforceability of the other provisions hereof, all of which paragraphs and provisions and portions thereof are hereby declared severable.

3.  The failure of either party to enforce any provision of this Agreement shall not be deemed a waiver of either party's right to assert any such claim in the future.

4.  This Agreement contains the entire agreement of the parties with respect to its subject matter and all prior or contemporaneous oral or written communications, understandings or agreements between the parties are hereby superseded in their entireties. This Agreement shall supercede and replace any prior agreements between the Parties.

5.  No amendment, modification or waiver of any paragraphs or provisions herein shall be valid unless undertaken in conformity with this Agreement and unless in writing and signed by all parties hereto.

6.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7.  Headings to the various provisions in this Agreement have been included for convenience of reference only and shall not modify, define, limit or expand the express provisions of this Agreement.

8.  This Agreement may not be assigned by Attorney in whole or in part whatsoever, but may be assigned by ANL at any time at it sole discretion.

## L.  LIMITATION OF LIABILITY

UNDER NO CIRCUMSTANCES WILL ANL BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, BASED ON CLAIMS OF ATTORNEY, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE OR PROFITS, LOSS OF BUSINESS, LOSS OF GOODWILL, LOSS OF OPPORTUNITY OR ANY OTHER FINANCIAL LOSS, ARISING OUT OF BREACH OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE ARISING OUT OF THIS AGREEMENT.

## M.  WARRANTIES

ANL HEREBY MAKES NO REPRESENTATIONS AND NO IMPLIED OR EXPRESS WARRANTIES AS PART OF THIS AGREEMENT AND HEREBY SPECIFICALLY DISCLAIMS ANY IMPLIED OR EXPRESS WARRANTIES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

## N.  TRADEMARKS, SERVICE MARKS

Attorney shall not use any name or mark of ANL in any advertising, publicity or in any other commercial manner and shall not make any media or public announcement referring to ANL without the prior written consent of ANL.

After review of this Agreement and the Service Contract the undersigned Attorney hereby agrees to become a participating attorney with ANL this day marked below.

**GENNADY LITVIN,**
**Individually:**

Dated: _3/15/12_

Signature: _____

Print Name: _Gennady Litvin_

Bar/License Number: _4727228_

State of Licensure: _NY_

FTL-PLP-0008209

Firm Name: Litvin Law Firm PC

Street Address: 1716 Coney Island Ave.

City, State, Zip: Brooklyn, NY 11230

Customer Service Number: 877-829-4104

Fax Number: 347-713-1465

E-mail Address: glitvin@litvinlaw.com

**GENNADY LITVIN,**
**on behalf of Litvin Law Firm P.C.**

Signature: _____

Printed Name: Gennady Litvin

Title: President

FTL-PLP-0008210

| Program | Consultation | Payment Date | 1st Payment Amount | Subsequent Payment Amount |
|---|---|---|---|---|
| MAP, TAP ND (750) (PLP) | Month 3 | Month 4 | $75.00 | $250.00 |
| | | | | |
| FD, TAP Default (750) (PLP) | Month 1 | Month 2 | $75.00 | $250.00 |
| | | | | |
| SD, TSD (750) (1st pay 3 payments up front) (PLP) | Month 1 | Month 1 | $75.00 + $250.00 | $250.00 |
| | | | | |
| MAP, TAP ND (595) (PLP) | Month 3 | Month 4 | $75.00 | $250.00 |
| | | | | |
| FD, TAP Default (595) (PLP) | Month 1 | Month 2 | $75.00 | $250.00 |
| | | | | |
| SD, TSD (595) (1st pay 3 payments up front) (PLP) | Month 1 | Month 1 | $75.00 + $250.00 | $250.00 |

*Note: The month 1 payment made to Attorney reflects the deduction of $175.00, of which such funds will be used to pay for the Attorney's access fee.

FTL-PLP-0008211