UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-61119-CIV-MARRA

CHARLES LICHTMAN, as Receiver for
PRIME LEGAL PLANS, LLC, *et al.*,

      Plaintiff,

vs.

LITVIN LAW FIRM P.C., a New York
professional corporation;
LITVIN, TORRENS & ASSOCIATES, PLLC,
a Florida professional limited liability company;
GENNADY LITVIN, individually; and
LUIS A. TORRENS, individually,

      Defendants.

_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants' Motion to Dismiss with Prejudice the

Receiver's First Amended Complaint.  (DE 9, 10).  Plaintiff responded (DE 20), and Defendants

replied (DE 23).  The Court has considered the briefing and is otherwise fully advised in the

premises.

**I. Background**

Charles H. Lichtman ("Receiver") was appointed as equity receiver for over 40 corporate

entities ("Receivership Defendants") by the Court orders ("Receivership Orders") in *Federal Trade*

*Commission v. Prime Legal Plans, LLC, et al.*, 12-cv-61872 ("FTC case").  (DE 14, 67, 156 in 12-

cv-61872).  On May 31, 2013, the Receiver filed his First Amended Complaint ("FAC") in this

action against Defendants Litvin Law Firm, P.C.; Litvin, Torrens & Associates, PLLC; Gennady

Litvin; and Luis Torrens (collectively "Litvin Defendants") to recover assets of the Receivership Defendants that were allegedly wrongfully received by the Litvin Defendants.   The Litvin Defendants were not parties in the FTC case.

The Receiver alleges in the FAC that from approximately 2010 to 2012, the Receivership Defendants engaged in selling mortgage loan modification and foreclosure defense services to consumers.  FAC, ¶¶ 12-18.  The Receivership Defendants charged monthly fees of either $595 or $750 per month and promised consumers full-service legal representation from expert mortgage foreclosure attorneys.  *Id.*  In reality, however, the Receivership Defendants were "sham marketing operations," and consumers received "no service of value for the money paid."  *Id.*

The Litvin Defendants participated with the Receivership Defendants in this "Legal Plans scheme" by soliciting consumers and receiving monthly payments from the Receivership Defendants per homeowner client enrolled.  *Id.*, ¶¶ 26-38.  Overall, the Litvin Defendants received over $4.9 million from the Receivership Defendants.  *Id.*  However, the Receiver alleges that the Litvin Defendants provided no value to the Receivership Defendants. *Id.*, ¶ 50-60.  Nevertheless, the Litvin Defendants refused to return the money to the Receiver.  *Id.*  Thus, pursuant to the authority granted by the Receivership Orders, the Receiver brings claims against the Litvin Defendants for: (1) turnover of the funds transferred to the Litvin Defendants during the operation of the Legal Plans scheme (count I); (2) recovery of the allegedly fraudulent transfers made to the Litvin Defendants in violation of the Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, *et seq.* ("FUFTA") (counts II - IX); (3) unjust enrichment (count X); (4) equitable disgorgement of unlawful profits (counts XI); (5) negligence and negligent misrepresentation to the consumers (counts XII and XIII); and (6) accounting (count XIV).  (DE 20).  The Litvin Defendants seek to dismiss the FAC under

the Federal Rule of Civil Procedure 12(b)(6) because the Receiver lacks standing to bring the claims.

## II. Legal standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Overall, a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (internal quotation omitted); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Here, the Litvin Defendants challenge the Receiver's standing. The core elements of standing are jurisdictional. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  The Eleventh Circuit has said:

> Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms. 'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion' . . . 'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (citations omitted).

When the attack is facial, the standard is similar to the one employed under Rule 12(b)(6), and all well-pleaded allegations in the complaint are taken as true.  *Id.*  When the attack is factual, the court may go beyond the pleadings and can weigh the evidence.  *Id.*

Here, the Litvin Defendants are not attempting to present evidence outside of the FAC, with the exception of the Receivership Orders, which are incorporated into the FAC by reference, *see* FAC, ¶ 1 (DE 5).  Thus, the challenge is a facial attack.  Nevertheless, the Court may consider the Receivership Orders.  *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1076 n. 9 (11th Cir. 2013) (on a Rule 12(b)(6) motion to dismiss a court may review materials incorporated into the complaint by reference).

### III. Discussion

**1. Standing**

The crux of the Litvin Defendants's argument is that the Receivership Defendants were not injured, and that the Receiver asserts the claims on behalf of the consumers.  According to the Litvin Defendants, this means that the Receiver lacks standing.  The constitutional elements of standing are (1) an injury in fact, (2) a traceable connection between the injury and the complained-of conduct,

and (3) redressability, or likelihood that the requested relief would redress the alleged injury. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). A plaintiff must also satisfy the prudential requirements. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). Unlike constitutional prerequisites, prudential limitations are judicially self-imposed and arise from the concerns about a properly limited role of the courts in a democratic society. *Id.* Courts recognize "three considerations which discourage judicial action despite a party's satisfaction of the constitutional prerequisites for standing: (1) assertion of a third party's rights, (2) allegation of a generalized grievance rather than an injury particular to the litigant, and (3) assertion of an injury outside the zone of interests of the statute or constitutional provision." *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984-85 (11th Cir. 1990). For example in *Hadley*, the Eleventh Circuit Court of Appeals found that the bankruptcy trustee did not satisfy the constitutional requirements of standing, and asserted an injury outside of the statutory zone of interest, when the trustee brought claims on behalf of the creditors of the bankrupt entity. *Id.* at 984-87. In particular, the court held that the bankrupt entity was not injured, the creditors did not delegate the authority to the trustee to sue on their behalf, and the suit would not have redressed the injury because the creditors could pursue their own claim. *Id.* Further, this Court has previously stated that "[t]he Florida Supreme Court has ruled that a receiver may not pursue claims that are owned directly by creditors of the receivership entities, but he may bring in an ancillary action claims previously owned by the entities in receivership." *Steinberg v. Alpha Fifth Group*, 04-60899CIV, 2008 WL 906270 (S.D. Fla. 2008).

The Litvin Defendants argue that the Receiver brings all claims on behalf of the consumers. However, the FAC reveals that the claims of turnover (count I), unjust enrichment (count X), disgorgement (count XI), and accounting (count XIV) are asserted on behalf of the Receivership

Defendants.  The FUFTA claims (counts II - IX) are brought on behalf of both the consumers and

the Receivership Defendants.  Finally, the negligence claims (counts XII and XIII) are brought on

behalf of the consumers only.  The Litvin Defendants do not argue that the Receiver lacks standing

to assert claims on behalf of the Receivership Defendants.  Thus, it is the Receiver's standing with

respect to the FUFTA and negligence claims brought on behalf of the consumers that is at issue.

The Receiver asserts that the district court in the FTC case had the authority to issue the

Receivership Orders, and that, pursuant to the Receivership Orders, the Receiver is empowered to

both (1) recover the Receivership Defendants' assets, and (2) protect the interests of consumers who

have transacted business with the Receivership Defendants.  The Litvin Defendants do not challenge

the court's authority to issue the Orders, but argue that granting the Receiver standing in this case

will interfere with the consumers' ability to bring their own claims.  The Court agrees with the Litvin

Defendants on this issue.

The Receivership Order entered on October 12, 2012 indeed empowers the Receiver to

"[p]revent the inequitable distribution of assets and determine, adjust, and protect the interests of

consumers who have transacted business with the Receivership Defendants," and to "[i]nstitute,

compromise, adjust, appear in, or become party to such actions or proceedings in state federal, or

foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of

the receivership Defendants."  Prelim. Inj. and Order, Sec. XVI, ¶¶ G, L (DE 67 in 12-cv-61872).

However, similar to the situation in *Hadley*, *see E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979,

981 (11th Cir. 1990), there is no indication that the consumers assigned their rights to the Receiver,

or otherwise authorized him to sue on their behalf.

Thus, the Receiver is attempting to assert the rights of third parties, and cannot satisfy the

prudential requirements of standing.  The Court rejects the Receiver's reliance on a non-binding

decision *In re U.S. Oil & Gas Litig.*, 83-1702-A1-CIV, 1988 WL 28544 (S.D. Fla. 1988).  Moreover,

it is impossible to ascertain on behalf of which consumers the Receiver brings this action, and

duplicative litigation may ensue if the consumers bring their own claims.  *See Caplin v. Marine*

*Midland Grace Trust Co. of New York*, 406 U.S. 416, 432 (1972).  While the Receiver may assert

the Receivership Defendants' claims, the Receiver's claims on behalf of the consumers shall be

dismissed.  *See also Marwil v. Farah*, 1:03-CV-0482-DFH, 2003 WL 23095657 (S.D. Ind. 2003).

**2. FUFTA claims (counts II - IX)**

As discussed above, the Receiver has standing to assert the Receivership Defendants' claims.

The Receiver seeks to recapture the allegedly fraudulent transfers that the Litvin Defendants accepted

from the Receivership Defendants without providing any value in return.  These claims arise under

sections 726.105(1),[1] 726.106(1),[2] 726.108,[3] and 726.109(2)[4] of the Florida Statutes, which are part

---

[1]Section 726.105(1) states:
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a
creditor, whether the creditor's claim arose before or after the transfer was made or
the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
(b) Without receiving a reasonably equivalent value in exchange for the transfer or
obligation, and the debtor:
1. Was engaged or was about to engage in a business or a transaction for which
the remaining assets of the debtor were unreasonably small in relation to the
business or transaction; or
2. Intended to incur, or believed or reasonably should have believed that he or she
would incur, debts beyond his or her ability to pay as they became due.
Fla. Stat. Ann.§ 726.105(1).

[2]Section 726.106(1) states:
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor
whose claim arose before the transfer was made or the obligation was incurred if
the debtor made the transfer or incurred the obligation without receiving a
reasonably equivalent value in exchange for the transfer or obligation and the

of the Florida Uniform Fraudulent Transfers Act ("FUFTA"), *see* Fla. Stat. § 726.101.

The FUFTA was promulgated to prevent an insolvent debtor from transferring assets out of

the reach of its creditors when the debtor's intent is to defraud.  *See* Fla. Stat. Ann. §§ 726.105,

726.106, 726.108, 726.109.   Thus, the statute provides that any transfer made by a debtor is

_____

debtor was insolvent at that time or the debtor became insolvent as a result of the
transfer or obligation.
Fla. Stat. Ann. § 726.106(1).

[3]Section 726.108 states:
(1) In an action for relief against a transfer or obligation under ss. 726.101-
726.112, a creditor, subject to the limitations in s. 726.109 may obtain:
(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the
creditor's claim;
(b) An attachment or other provisional remedy against the asset transferred or
other property of the transferee in accordance with applicable law;
(c) Subject to applicable principles of equity and in accordance with applicable
rules of civil procedure:
1. An injunction against further disposition by the debtor or a transferee, or both,
of the asset transferred or of other property;
2. Appointment of a receiver to take charge of the asset transferred or of other
property of the transferee; or
3. Any other relief the circumstances may require.
(2) If a creditor has obtained a judgment on a claim against the debtor, the
creditor, if the court so orders, may levy execution on the asset transferred or its
proceeds.
Fla. Stat. Ann. § 726.108.

[4]Section 726.109(2) provides:
(2) Except as otherwise provided in this section, to the extent a transfer is
voidable in an action by a creditor under s. 726.108(1)(a), the creditor may
recover judgment for the value of the asset transferred, as adjusted under
subsection (3), or the amount necessary to satisfy the creditor's claim, whichever
is less. The judgment may be entered against:
(a) The first transferee of the asset or the person for whose benefit the transfer was
made; or
(b) Any subsequent transferee other than a good faith transferee who took for
value or from any subsequent transferee.
Fla. Stat. Ann. § 726.109.

fraudulent as to a creditor if the debtor made the transfer to hinder or defraud the creditor or without

receiving "a reasonably equivalent value in exchange for the transfer." *Id.* "Pursuant to the statutory

scheme, the creditor is to demonstrate that: (1) there was a creditor to be defrauded; (2) a debtor

intending fraud; and (3) a conveyance of property which could have been applicable to the payment

of the debt due." *Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th DCA

2002).

A "creditor" is a "a person who has a claim." Fla. Stat. Ann. § 726.102(5). A "claim" means

a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Fla.

Stat. Ann. § 726.102(4). A "debtor" is defined as a "person who is liable on a claim." Fla. Stat.

Ann. § 726.102(7). In other words, if a debtor made a transfer to a third party to avoid satisfying the

debtor's obligation to a creditor, the creditor may recoup the transferred asset to cover the debtor's

obligation.

For example, receivers often bring claims under FUFTA to recoup payments collected by

Ponzi scheme investors. *See Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 860 F. Supp. 2d

1329, 1335 (S.D. Fla. 2011); *Wiand v. Morgan*, 919 F. Supp. 2d 1342, 1354-55 (M.D. Fla. 2013).

In these scenarios, the corporation that was run as a Ponzi scheme and is now in receivership is the

creditor. *Id.* The principals of the corporation in receivership are the debtors who made the

fraudulent transfers. *Id.* Lastly, the defendant investors who received their money with interest are

the third parties from whom the receiver seeks to recoup the fraudulent transfers. *Id.*

Here, the Receiver alleges that the Receivership Defendants made transfers to the Litvin

Defendants without obtaining any value in return. There are two ways to interpret the allegations

in the FAC: (a) the Receivership Defendants are alleged to be the debtors; or (b) the Receivership Defendants are alleged to be the creditors.

### a. Receivership Defendants as debtors

A claim may be stated if the Receivership Defendants made transfers to the Litvin Defendants to avoid a creditor's claims.  The FAC states that at the time the transfers were made, there existed at least one actual creditor of the Receivership Defendants.  FAC, ¶ 77, 92, 97, 107, 112.  In the Response to the Motion to Dismiss, the Receiver argues that he is a creditor of both the Receivership Defendants and the Litvin Defendants. Resp., p. 9 (DE 20).  However, the FAC does not contain any facts establishing the Receiver as a creditor of the Receivership Defendants.

Rather, the FAC states that the transfers to the Litvin Defendants were made "to the detriment of consumer victims and Receivership Defendants such that Receivership Defendants could not or cannot repay or refund consumer victims of the Legal Plan scheme."  FAC, ¶¶ 76, 86, 91, 96, 106, 111.   Thus, the allegation is that the consumers were the "creditors," and the Receivership Defendants and the Litvin Defendants were the "debtors."   However, as discussed above, the Receiver lacks standing to assert the consumers' claims.

### b. Receivership Defendants as creditors

#### i. Counts II - VII against Litvin Law Firm and Litvin Torrens & Associates

The Receiver also alleges that the Receivership Defendants were creditors as to the Litvin Defendants.  Specifically, the Receivership Defendants made transfers to the Litvin Law Firm and Litvin, Torrens & Associates, *see* FAC, Ex. A, B, C, D, but obtained no value in return.  However, in this scenario the transfers were made by the creditors.  Under the FUFTA, a creditor may obtain remedies when transfers were made by a debtor to a third party.  *See* Fla. Stat. Ann. § 726.105 (1)

("A transfer made or obligation incurred *by a debtor* is fraudulent as to a creditor" (emphasis added)); § 726.106(1) (same); § 726.108 ("In an action for relief against a transfer or obligation under ss. 726.101-726.112, a creditor . . . may obtain [a]voidance of the transfer"). In counts II - VII against the Litvin Law Firm and Litvin, Torrens & Associates the Receiver only alleges transfers by the Receivership Defendants, the creditors. Thus, counts II - VII against the Litvin Law Firm and Litvin Torrens & Associates shall be dismissed without prejudice with leave to amend.

### ii. Counts VIII - IX against Litvin and Torrens, individually

The Receiver alleges that Defendant Litvin and was the owner of the  Litvin Law Firm, and that Defendants Litvin and Torrens owned Litvin, Torrens & Associates. FAC, ¶¶ 4-5. Further, the Receiver asserts that the Receivership Defendants made transfers to the Litvin Law Firm and Litvin Torrens & Associates, and that individual Defendants Litvin and Torrens were the subsequent transferees. FAC, ¶¶ 117, 123.

Therefore, the allegations in counts VIII and IX against the individual Defendants are that the Receivership Defendants were the "creditors" with "claims" against the Litvin Law Firm and Litvin Torrens & Associates. The Litvin Law Firm and Litvin Torrens & Associates were the "debtors," who made the transfers to Litvin and Torrens, the third parties. Thus, the allegations in counts VIII and IX against Defendants Litvin and Torrens, individually, are sufficient to state the claims under FUFTA.

### 3. Common law claims (counts X, XI, XIV)

The Litvin Defendants argue that disgorgement (count XI) and accounting (count XIV) are remedies rather than claims, and that these counts should be dismissed because the Receiver fails to establish any actual claims. However, as discussed above, the Receiver's statutory claims on

behalf of the Receivership Defendants will proceed against the individual Defendants.  Thus, disgorgement and accounting shall not be dismissed.

Further, the Litvin Defendants contend that the doctrine of *in pari delicto* bars recovery for unjust enrichment (count X) in this case.  "The doctrine of *in pari delicto* is an equitable doctrine that states a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (quotation omitted).  This defense, for example, may be asserted against a bankruptcy trustee. *Id.* at 1151-52.  However, the doctrine may be unavailable when the claims to recoup fraudulent conveyances are brought by a receiver under state law.  *See id.; Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995); *In re Wiand,* 8:05CV1856 T27MSS, 2007 WL 963165 at *6-7 (M.D. Fla. 2007); *see also Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550 (Fla. 2d DCA 2003).

"Generally, the existence of an affirmative defense will not support a motion to dismiss. Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) on reh'g, 764 F.2d 1400 (11th Cir. 1985).

Here, it is not clear from the face of the FAC that the doctrine of *in pari delicto* bars the Receiver's unjust enrichment claim.  Thus, dismissal based on this defense is rejected at this point in the proceedings.  This order is without prejudice to the Litvin Defendants raising *in pari delicto* as an affirmative defense.

## IV. Conclusion

Accordingly, Defendants' Motion to Dismiss with Prejudice the Receiver's First Amended

Complaint (DE 9, 10) is **GRANTED IN PART and DENIED IN PART**.  Counts II - VII are

**DISMISSED WITHOUT PREJUDICE**.  The Receiver may file a Second Amended Complaint

within 14 days from the date of this Order.  Counts XII and XIII are **DISMISSED** for lack of

standing.  The Receiver may pursue the other claims on behalf of the Receivership Defendants only.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 24th day of March, 2014.

_____
KENNETH A.  MARRA
United States District Judge